Smith
v.
Lusher

PETER SMITH, PETER SKEN. SMITH, ABRAHAM TURCK, JONATHAN TURCK, WILLIAM SOULDEN and ABRAHAM VAN SANTVOORD, plaintiffs in error.

## *against.*

ERI LUSHER and RICHARD McMICHAEL, defendants in error.

S. and V. being partners in trade with Smith and three others, under the firm of S. & Co., S. made a promissory note, payable to V. to secure an alleged balance due from the firm to V., without the knowledge or consent of Smith ; which note was, before it became due, endorsed by V. to L. and M., who had notice of the firm, and that V. and S. were members of the firm, and of the consideration for which the note was given. In an action by the endorsees against the firm, as makers, including V. these facts were pleaded by Smith ; but he did not aver, that the alleged debt was not in fact due, nor that the note was given in fraud of the firm ; *held*, that though the action would have lain by V., he being both maker and payee, yet the endorsees might bring an action against the firm, and declare on the note as payable by the firm to V., and endorsed by V. to them, and recover in that form.

*Held*, also, that the plea of want of knowledge and consent in Smith, did not amount to the general issue ; but was merely a denial of actual knowledge or consent in the particular transaction ; and left legal knowledge and consent to be implied, from the nature of the connection between the partners, and from the law merchant.

But had the execution of the note been a fraud upon the firm, or the debt for which it was given depended on the adjustment of an account between the members of the firm, this would have constituted a defence at law or in equity. Per Sanford, Chancellor.

It is the constant practice for one partner to draw bills, or make notes in the name of the firm, without the knowledge or assent of his co-partners. Per Colden, Senator.

So for partners to make a firm note payable *to,* or draw a bill *on one of the* partners ; and *it seems* not to have been questioned, that an endorsee may recover upon these, unless they originated in a matter not concerning the partnership ; and that known to the endorsee at the time of the endorsement. Per Colden, Senator.

If payment of a firm note be resisted, as being in fraud of the partnership with the knowledge of the holder, the defendant, or defendants, must plead and prove these facts. Per Colden, Senator.

A man cannot be bound to himself ; and, *it seems,* that a bond, &c. by three persons to one of the three, could not be enforced at law. Per Colden, Senator.

In general, one man cannot bind another without his consent. Per Colden, Senator.

The power of one partner to bind another without his knowledge or consent, results from the nature of a partnership, and from the law merchant. Per Colden, Senator.

Whether a note made by one partner in the name of the firm, for a debt of the firm, could be impeached on the ground that it was made against the will of the other partners, and that known to the endorsee? Quere. Per Colden, Senator.

A bona fide note made by a partnership, payable to one of the firm, though it cannot, in the hands and name of the payee, be enforced at law, yet he may have relief in equity. Agreed, per Sanford, Chancellor, and Colden, Senator.

For a partnership may be indebted to one of the firm, and bind themselves, by note to him. How this may be. Per Colden, Senator.

Various cases of commercial paper, which, though it cannot be enforced at law between the original parties, yet may be, after being negotiated. Per Colden, Senator.

ON error from the Supreme Court. The action in the court below was assumpsit by the defendant in error, against the plaintiffs in error, as makers of a promissory note. The declaration was of August term, 1820, against P. Smith and Soulden, being in custody, &c. and Van Santvoord, P. Sken. Smith, and the Turcks, returned by the sheriff not found; and the first count was, for that whereas the defendants below, being merchants and co-partners in trade and merchandize, and the business of merchants and traders exercising and carrying on, under the name, style and firm of William Soulden & Co. at, &c. on the 15th day of March, A. D. 1816, under their name, style, firm and description of William Soulden & Co. made a certain note, &c., bearing date that day; and then and there delivered it to Abraham Van Santvoord, by which the defednants promised to pay him, or order, $5000, with interest, six months after date. And Abraham Van Santvoord, before payment, or the day fixed for the payment, to wit, on the day of the date, endorsed the note to the plaintiffs; and thereby ordered and appointed the contents of the note to be paid to the plaintiffs, or order, &c.; of which endorsement the defendants, on the same day of the date, had notice. &c. This was followed by the usual money counts, a count for goods sold &c. and the count on an *insimul computassent*.

P. Smith and Soulden imparled from term to term till October term, 1821; when P. Smith pleaded several pleas.

The first and second pleas were to the count on the note. The third plea was the general issue to the other counts, except as to so much of them as the plaintiffs claimed to apply to the note; and as to this, special matter.

The *fourth plea* was as follows: As to the promise mentioned in the plaintiffs' declaration, and supposed to have been made for goods, wares and merchandize, alleged to have been sold and delivered by the plaintiffs to the defendants, that he did not, with Van Santvoord, &c.; undertake and promise in manner and form, &c.; concluding to the country.

"And as to all the other several supposed promises and undertakings, in the plaintiffs' declaration mentioned, &c. that they are for one and the same cause of action, which is set out in the first count of the plaintiffs' declaration; and not for different and distinct causes of action. And as to all such other supposed promises and undertakings, &c. that the said Abraham Van Santvoord, named as payee in the said note mentioned in the plaintiffs' declaration, is the same Abraham Van Santvoord, who is one of the defendants in this cause; and was a partner in the said firm of William Soulden & Co. at the time the said note is alleged to have been made.; and that the said note was made by the said William Soulden, in the name of the said firm, to the said Abraham Van Santvoord, without the knowledge or consent of the said Peter Smith; for an account then alleged by the said Abraham Van Santvoord, to be due from the firm to him. That the plaintiffs, at the time the said note was endorsed to them by the said Abraham Van Santvoord, had notice that the said note was made by the said William Soulden, in the name of the said firm, payable to the said Abraham Van Santvoord, a partner in the said firm; and for what consideration the said note was made. And this," &c.

In reply to this last plea, as to all except the first count of their declaration, the plaintiffs entered a *nolle prosequi ;* and for replication, so far as it related to the first count, said, " That although true it is, that the said note was made by the said William Soulden, in the name of the said firm of William Soulden & Co.; and that the said Abraham Van

Santvoord, named as payee in the said note mentioned in the plaintiff's declaration, is the same Abraham Van Santvoord who is one of the defendants in this cause, and was a partner in the said firm of William Soulden & Co. at the time the said note was made ; yet, &c. that at the time the said note was endorsed, &c. as in the declaration is alleged, they had not notice that the said note was made by the said, William Soulden, to the said Abraham Van Santvoord, *without the knowledge or consent of the said* Peter Smith for an account then alleged by the said Abraham Van Santvoord to be due from the said firm to him ; and for what consideration the said note was made ; and this," &c. (concluding to the country.)

ALBANY.
Dec. 1825.

Smith
v.
Lusher

Special demurrer, assigning for cause, that the replication concluded to the contrary ; whereas it should have concluded with a verification ; inasmuch as the plea averred, "that the said note was made by the said William Soulden, in the name of the said firm, to the said Abraham Van Santvoord, without the knowledge or consent of the said Peter Smith :" and the plaintiffs, in their replication, instead of taking issue on that fact. said, by way of avoidance, that, at the time the note was endorsed, &c. they had not notice that it was made by Soulden to Van Santvoord, *without the knowledge or consent of the said* Peter Smith : also that the replication was informal and uncertain in this : the plea averred that the plaintiffs at the time, &c. had notice that the note was made by Soulden, in the name of the firm, payable to Van Santvoord, a partner in the firm ; and the plaintiffs, instead of admitting or denying such notice, say, that at the time, &c. they had not notice that the note was made by Soulden to Van Santvoord, without the knowledge or consent of Peter Smith, for an account then alleged by Van Santvoord to be due from the firm to him ; thus seeking to put in issue matter not expressly alleged in the plea ; and leaving it uncertain and doubtful, whether the plaintiffs intended, by the replication, to admit or deny the notice averred in the plea, &c.

Joinder in demurrer.

Soulden appeared and confessed the action ; and the cause

was continued upon the demurrer by *curia advisare vult*, to August term, 1824 ; when the Supreme Court gave judgment for the plaintiffs. The cause was then continued by *vice comes non misit breve*, to February term, 1825, when final judgment was rendered for the plaintiffs ; whereupon the defendants below brought error to this court.

The reasons for the judgment on the demurrer were assigned by that court, as follows :

The plea consists of two parts : *First*, that Abraham Van Santvoord, named as payee in the note, is the same Abraham Van Santvoord who is one of the defendants, and was a partner in the firm when the note was made ; and that the note was made by Soulden, in the name of the firm, without the knowledge or consent of Smith, for an account alleged to be due from the firm to Van Santvoord.

*Secondly*. That the plaintiffs, at the time the note was endorsed to them by Van Santvoord, had notice that the note was made by Soulden in the name of the firm, payable to Van Santvoord, a partner in the firm, and for what considertion.

There is no averment in the plea that the plaintiffs had notice that the note was made without the knowledge of Smith. The fact of its having been so made, is averred in the first part of the plea. But the notice which the plaintiffs are alleged to have had in the second part of the plea, is merely that Soulden made the note in the name of the firm, payable to Van Santvoord, a partner in the firm.

The fact, therefore alleged in the replication, that the plaintiffs had not notice that the note was made without the knowledge of Smith, &c. is no answer to the averment in the plea ; but is new matter, set up by way of avoidance : and it is an invariable rule in pleading, that whenever new matter is introduced, the pleadings must conclude with a verification, in order to give the opposite party an opportunity of answering it. (1 Chitty, 5, 38. Com. Dig. Plead. (E. 33.) 1 Saund. 103, note, and cases there cited.) The replication takes issue upon a fact not previously averred. The special causes of demurrer, therefore, are well taken.

But the material inquiry is, whether the replication be good in substance; as leave will of course, be granted to the plaintiffs, to amend it in point of form; and whether it be good or not, depends upon the fact, whether the matters set forth in the plea, amount to a good bar of the plaintiffs' action. If they do, the plaintiffs, by not answering, have admitted them; for whatever is material, and is not traversed, is, in effect, admitted. (1. Chitty's Plead. 591.)

The point presented by the plea is this; whether a promissory note, made by one of six members of a firm to another member in the partnership name, without the knowledge or consent of the other members of the firm, though for a debt due from the firm to the payee of the note, is valid and effectual in the hands of an endorsee, with notice that it was made by one of several partners to another, for a partnership debt due to him but without notice that it was made without the knowledge or consent of the other partner.

We perceive no legal objection to one of several partners becoming the creditor of the firm, and taking a promissory note in the name of the firm as evidence of his debt. It is true, he cannot maintain an action at law upon the note; because, being one of the makers, he cannot sue himself. (*Mainwaring* v. *Newman*, 2 Bos. & Pull. 124; and *Moffatt* v. *Van Millingen*, cited in note to last case.) But that circumstance will not prevent the instrument from being valid as a promissory note, in the hands of an endorsee. It is an absolute promise on the part of A. B. & C. to pay to A. or order, a certain sum of money. A. B. & C. are not the same persons with A. It is therefore a promise from one person to pay to another. The payment is not to be made out of a particular fund, nor does it depend upon any contingency.

A bill of exchange is defined to be an open letter of request from one person to another, desiring him to pay a sum named therein to a third person on his account. (2 Black. Com. 466. Chitty on Bills, 1.) But whoever doubted the validity of a bill, because it was drawn by one member of a firm upon the partnership, or by the firm upon an individual member.

It is conceded, that if this had been an accommodation note, made for the purpose of raising money for the benefit of the firm, it would have been valid in the hands of an endorsee as a promissory note. But we apprehend the object with which an instrument is made, can have no influence in determining whether it be a promissory note, or not, within the statute  That must depend upon the face of the instrument itself. Whether it can be enforced as between the parties litigant, admitting it to be a note within the statute, is a distinct question.

It is admitted by the pleadings that the note was given for a partnership debt due to Abraham Van Santvoort; and not for the individual debt of Soulden, who drew the note. Now, each partner has an implied authority to give the partnership security for the debt of the firm ; and we have not felt the force of the considerations which were urged by the defendant's counsel, to show that debts due to the members of the firm, were excepted from the general operation of this general authority.

It is said, that although, as between a creditor and the firm, all the parties are liable for the whole debt, yet, as between themselves, each is answerable only for his respective share; so that one partner can have no right against his co-partner, in capacity of partner, but to what is due to him out of the joint stock, after making all just allowances ; (1 East, 30; Watson's Part. 18, 34;) that Peter Smith, therefore, is liable only for one-sixth of the original debt, for which this note was given ; whereas it is now sought to charge him with the whole.

It will at once be perceived, that this doctrine has no application to a case where the partnership funds are sufficient to pay all the debts of the firm. It can only apply, where, in consequence of a deficiency in the partnership property, an individual partner has been compelled to pay a debt of the firm and calls on his associates for contribution. Then each is responsible only for his individual share. Now, in this case as in every other, we are to intend that there was sufficient partnership property to pay all the debts, unless the contrary be shown ; and there is no averment that there was any deficiency.

This, then, being a debt due from the firm, for which each partner had an implied authority to give the partnership paper, the averment in the plea, that the note was given without the knowledge or consent of Peter Smith, is immaterial. If it had been the individual debt of William Soulden, then the transaction, not being within the partnership business, it would have been incumbent on the plaintiffs, before they could have recovered, to show the individual consent of each partner, to the giving of the note. This doctrine is perfectly settled in this court. (*Dob* v. *Halsey*, 16 John. 38. *Foot* v. *Sabin*, 19 John. 157.) But in a transaction within the scope of the partnership, the acts of each partner are legally binding on the whole, though done without their knowledge and consent.

Suppose one of six partners should object to the giving of the partnership paper, for a pre-existing debt of the firm, for which they were unquestionably liable ; and at the time of giving it, should give notice to the creditor that it was against his consent ; would that invalidate the security ? Or, in an action against the firm, upon the note, would it afford any defence to the dissenting partner, if he set it forth by way of plea ? The conclusive answer is, " your individual consent was not necessary to the validity of the instrument ; but only the assent of the firm." And the averment in the plea, is perfectly consistent with the allegation in the declaration, that the defendants, in their partnership character, made the note in question.

A plea like this, in an action against a sole defendant, might amount to the general issue ; and, in such a case, the doctrine of the defendant's counsel, in relation to express and implied contracts might have some application. (Lawes, 87.)

We are, on the whole, of opinion, that the plea is bad ; and that the plaintiffs are entitled to judgment upon the demurrer.

*D. Cady*, for the plaintiffs in error. The replication is bad both in form and substance. This was conceded by the court below. But we contend that they erred in overruling the plea.

The averment that the note was made without the knowledge or consent of Peter Smith, was material ; and negated both *implied* and *express* consent; and the defendants in error were bound, either to have taken issue upon it, or to have demurred specially, on the ground that it amounted to the general issue. That averment being admitted, in its broadest sense, shows the declaration to be bad. The defendants in error cannot now be permitted to urge, that the note was made with the implied consent of Peter Smith. A man cannot be bound without his consent. Saying such' a thing was done *without consent*, in fair construction, negatives consent either express or implied. Can the law imply a promise where it cannot imply consent ? On the general issue, there is no doubt, that consent, either express or implied, must have been proved. One or the other enter into the essence of every contract. (Pow. on Contr. 9. Com. on Contr. 3. *Fenn* v. *Harrison*, 3 T. R. 757. *Shiriff* v. *Wilks*, 1 East, 48. 2 Mont. on Partn. 145.) A partner is but the agent of his firm. Suppose the master of a ship to contract for his owner, as in *King* v. *Lenox*, (19 John. 236.) or a merchant's clerk for his principal, or a wife for her husband ; and suppose, in each case, a note be given in the name of the principal ; is there a doubt that, on the general issue, an express or implied authority must be shown ? The Supreme Court have decided, that a partner is bound, notwithstanding his express dissent. Suppose, to an action on a note given by the wife in the name of the husband, he should plead that he never consented, and the plaintiff should admit this in his replication, can it be pretended that the action would lie ?

One partner has no authority to make a promissory note in the name of the firm, to one of the partners, without the express consent of all the partners ; and the note is, therefore, fraudulent and void against all the partners who did not consent to its being made. There is a great difference between a debt due to a third person, and one due from the firm to an individual member of it. The former is one for which they are all jointly liable. The creditor must sue them jointly ; and he may then take their joint or separate

property or persons. No case can be found, where a partner was held able to bind the firm by a note, from the firm to himself, or another member of the firm. The claim in *Foot* v. *Sabin,* cited by the Supreme Court, was due to a third person; and such was also *Shiriff* v. *Wilks,* (1 East, 48.) All the members of a firm cannot be jointly indebted to one. (1 East, 20.) The law presumes, that each put into the partnership stock, equal sums, to be managed for the mutual benefit of all the partners, and to be divided equally. (Law of Partnership, 34.) Here, the partnership is admitted in general terms. The balance is the partnership fund. As between the partners, nothing can be claimed, except the balance, after making all just allowances. (Watson's Law of Part. 18. 1 East, 20. Cowp. 445, 9, There is no personal claim by one member of the firm against the others, except for misconduct, waste, or squandering the partnership effects; and this, only after a balance struck, or an adjustment by a court of equity. No action at law will lie, till a balance struck. (12 John. 401, 2. 14 id. 318, 322. 4 Dal. 434, 5. 13 East, 7. 1 Mont. Part. 63.) Can a member of the firm, by this indirect proceeding, take the remedy into his own hands? Can he thus superadd the personal responsibility of the partners? The partners cannot be deprived of the ordinary remedy between themselves, without their consent. (4 Dall. 435.) A partner never acts by the authority of his firm, except when he acts with third persons; and, in that case, the express dissent of one partner, and notice to the creditor, will take away the binding effect of a note given by the other even for a previous partnership debt. (*Lord Viscount Gallway* v. *Mathew,* 10 East, 264.) Nor is the firm liable, if, in fact, the note was given for an individual debt. (*Dob* v. *Halsey,* 16 John. Rep. 34, 38. *Livingston* v. *Hastie & Patrick,* 2 Caines, 246, 249. *Lansing* v. *Gaine & Ten Eyck,* 2 John. Rep. 300. *Livingston* v. *Roosevelt,* 4 id. 251. *Shiriff* v. *Wilks,* 1 East, 48.) These cases all go on the ground that you cannot, without consent, express or implied, subject those members of the firm, who are, in fact, strangers to the transaction, and not in duty bound to pay the debt created. If a sufficiency of funds was in

question, it lay with the plaintiffs below to aver and prove this. But, in truth, it makes no difference, whether the firm have funds or not. If there be sufficient, it is the best of all possible reasons, why their persons should not be bound; but the fund alone looked to. In *Mainwaring* v. *Newman*, (2 B. & P. 120; and see the notes to that case, id. 124,) great doubts were entertained, whether the note was good. But admitting that case to be law, we do not see the bearing of it. The question was not one of consent. A man cannot, with others, promise to himself at all, so as to bind him in law; but he must go into equity for his remedy. (*Bosanquet* v. *Wray*, 6 Taunt. 597, 605.) It should be borne in mind, that this is not the case of a bill of exchange, drawn by the firm on one of the partners, or *e converso*, in favor of a third person. But even then, the claim would not be bettered, if the third person had knowledge of the facts. Here, the plaintiffs below must have recovered upon this paper, technically, as a promissory note, or not at all.

The facts in the plea, showing that the note was fraudulently made and put in circulation, the plaintiffs below should have averred that it was endorsed to them for a valuable consideration. (10 John. 231. 1 Campb. 100. 2 id. 574.)

The defendants in error took the note, subject to every objection, which the partners who did not consent to its being made, might have urged against it in a court of equity, while it remained in the hands of the payee. They knew the parties, and knew the firm; and were bound to know all the peculiar circumstances, and therefore acted against good faith. They cannot allege ignorance of the law, that Soulden could not make the note. Whatever Van Santvoord must have shown in a suit by him, the endorsees were bound to show. (12 John. 161. 4 Dall. 370.) To bind Smith, either at law or in equity, he must have been shown to have consented.

The plea does not admit, as supposed by the Supreme Court, that the firm owed Van Santvoord. The language is, that the note was given for a debt alleged by himself to be due to him. He might admit a debt due from the firm

to third persons, (1 Phil. Ev. 73, and the cases there cited,) but not to himself.

The note was not originally a note within the statute; nor could it be made so by any subsequent event; nor be declared on as such. If it be considered as a note made by the partnership, payable to one of the partners, it was according to its legal effect, payable out of the partnership funds; and if so, in the hands of the payee it did not cease to be so payable, by being endorsed to the defendants in error. (Willes, 399. 12 John. 159. Willes, 393.) The character of this paper must be looked to, while it was in the hands of Van Santvoord. It was a nullity when there.

[*Colden*, Senator. What would you do with a note or bill drawn by yourself and payable to yourself?]

It would be waste paper.

[*Colden*, Senator. But you pass it away.]

Still it could not be declared on as a note payable to me. It must be brought forward in some other character. Here the note is, not only in fact payable by one to himself; but it is declared on as such by the plaintiffs. The declaration is *felo de se*.

*J. V. Henry*, for the defendants in error. This case has been viewed wrongly, by the gentleman, from the outset. He has treated it both in the court below, and now again in this court, as a question between partners. This is the grand mistake. It is not so. Is it to be endured, that a bill drawn by a partner on his firm, or *e converso*, and endorsed by the payee, shall be void, because on or by a house of which the drawer or acceptor is a member? Or, as seemed to be insisted by the gentleman, in reply to the inquiry of an honorable member of the court, that a note made by a firm payable to itself, or the order of itself, and endorsed by the firm, would be a nullity? The whole of the argument against us, is founded on this fallacy. If consent is necessary, what becomes of a partnership where many members of the firm reside at such distances as to preclude the inference, tha

consent is in fact given? They are bound, though entirely ignorant of the contract.

I shall not attempt to vindicate the replication against the special demurrer. I grant that, having replied new matter we shoud not have concluded to the country. We object to the plea. We come as *bona fide* endorsees, in the fair course of trade. Being so, can Peter Smith defend on the ground that there was, in him, a want of knowledge or consent?

If the firm did not owe Van Santvoord, Smith should have said so in his plea. The indebtedness not being denied, shall be intended in support of the note, and constitutes a valid consideration. Suppose Van Santvoord had loaned $5000 to the firm; is it to be doubted, that the sum might have been secured in the form now in question? A debt from the firm to the individual member, would be created by the loan; and being created, could not the same member who negotiated the loan, furnish evidence of the debt? And could not a note, given in security, be transferred for a valuable consideration? In such a case, the note is signed *without* but not *against* the consent or will of the other partners. Nothing is said, that the firm were, in this case, unable to pay. So much, supposing we took with full notice of every thing.

But as the case stands, if there was not a cent due, the firm are holden, because we took the note in good faith, The sum was alleged to be due; and we believed and trusted to the allegation. Such is the substantial language of the plea. Can this be made to mean, as now contended, that in truth no debt whatever was due? The plea does not pretend that we had notice of the alleged want of knowledge or consent.

The power of one partner to contract and give notes for firm debts, without the consent of the other members of the firm, is well settled by authority. (Bac. Abr. Merchant and Merchandize, (C.) *Livingston* v. *Hastie & Patrick*, 2 Caines, 246. *Lansing* v. *Gaine & Ten Eyck* 2 John. Rep. 300. *Swan* v. *Steele*, 7. East, 210  Chitty on Bills, 5 ed. 39 and the cases there cited, particularly in note *c*. *Livingtson* v.

*Roosevelt,* 4 John. Rep. 251, 269.) In this last case, at page 265, Van Ness, J. admits the general rule, in terms, as we have presented it upon these pleadings. He says that the rule applicable both to general and special partners is, that in transactions relating to the joint concern, one of several partners may bind the rest; that he may sign notes, endorse, or accept bills for the common benefit, &c. without applying to the rest in every particular case. In the same case, (page 270,) Spencer, J. recognizes the case of *Swan* v. *Steele,* (7 East, 210,) as sound law.

The breach of confidence among partners cannot affect third persons. The power of one takes in and binds the whole firm, and every individual member of it, to the same extent as himself. (Chitty on Bills, 5 ed. 39, 40, 41, and the cases there cited, particularly in note *e.*) *Lane* v. *Williams,* (2 Vern. 277,) is a very strong case to this point. The partner was there holden bound in equity by a note of his co-partner, for money which was never applied to the common business.

The note in question was originally good within the statute of Ann, (1 R. L. 151.) It was not payable out of a particular fund; and especially, after it was endorsed, it became a perfect note within the statute, being the same in both form and effect as an inland bill of exchange. (Chit. on Bills, 421, 5 ed. and the cases there cited. *Heylin* v. *Adamson,* 2 Burr. 669, 676. *Brown* v. *Harraden,* 4 T. R. 148.) It may, therefore, be treated as a valid promissory note in every shape. Even if it took its existence as a promissory note only after endorsement, it may be called by that name throughout, upon the doctrine of relation. A note payable to a man's own order is good. A promise by a partnership to pay one of the firm, is like a promise in a corporate capacity to pay an individual member of the corporation. *Ridley* v. *Taylor,* (13 East, 175,) is a complete illustration of this position. (Chitty on Bills, 5 ed. 44, note *c.* S. C.) This, it is true, was the case of a bill; but we have seen that a note has the same effect, under the statute of Ann. The doubt expressed by Lord Eldon, in *Mainwaring* v. *Newman,* (2 B. & P. 120,) went on the effect of a dissolu-

tion before the note was negotiated, (id. 125 ;) and the notes to that case, p. 124, go no farther.

We have seen that if this note were an inland bill of exchange, we might clearly have recovered upon it. (Chitty on Bills, 5 ed. 44.) We have also seen that it is so in effect. It is now said, however, that we cannot go upon it as such, because we have miscalled it a promissory note. But this makes no difference. If our declaration makes out a title, and shows the essentials of a bill of exchange, this is enough. It is substantially a declaration on an inland bill.

It is not necessary, to make out a *bona fide* endorsement and holding, that we should aver value received. This averment is unusual, and indeed inapplicable to endorsements; and the omission was never holden to discredit a note in the hands of an endorsee. (Chitty on Bills, 5 ed. 461, and the cases there cited.) The defendants below must by pleading or proof, have cast suspicion upon the fairness of the transaction, before the plaintiffs could be called on to show a consideration paid. (id. 511, and the cases there cited. And with this doctrine agree the cases cited to this point on the other side. (*Brown* v. *Mott*, 7 John. Rep. 361. *Paterson* v. *Hardacre*, 4 Taunt. 114, S. P.)

A bill is never taken by a third person on the credit of the partnership fund merely ; but of the individuals also ; and if otherwise, it is no objection to the note being within the statute. No matter if the fund was looked to as the sole source of payment, so long as this does not appear on the face of the note.

No equity is shown which could defeat the note, even on a bill filed, between the original parties. The equitable rule contended for, even if applicable, fails here, because it is not sustained by the facts. But to the great number of cases cited on the other side, the general answer with which I set out will apply ; that they, almost without exception, relate to the question between the partners themselves, and not to third persons.

*Cady*, in reply. This case presents a new and important question ; one never before presented in a court of justice.

Not one case has, or can be produced, where an assignee was ever allowed to recover on a contract void from the beginning. *Livingston* v. *Roosevelt*, (4 John. 251,) was the case of an action by an endorsee against endorsers, who are liable even though the note be a forgery. The question related merely to the validity of the endorsement; and this was holden void, because the partner had no authority to endorse for his individual debt; and so far supports the doctrine for which we contend here; that the debt should have been due from all the partners. *Mainwaring* v. *Newman*, (2 B. & P. 120, 124,) cited by the Supreme Court, will be found to be a two-edged sword. Why was not Brander sued there alone as maker, if one partner can give a note from himself to the firm? This not being done, am I not justified in saying that it was not believed to be a valid note as between the maker and payees. Not a single case can be produced of an action by a payee who was one of the firm that made the note. All the cases are of endorsers, whose liability depends on a distinct principle. Endorsement creates a new contract. It assigns all the interest of the endorser; and superadds an agreement to pay in default of the maker. Had Van Santvoord any legal rights? None. He could, therefore, transfer none. If he had been sued as endorser, then the case, I admit, would have been parallel with Roosevelt's; not otherwise. A man may be drawer, payee and acceptor, it is true, in form; but no action can lie in this shape. The paper is good for nothing till endorsed; and then you cannot treat or declare on the bill as valid in its original shape; but you must go against the party as endorser. He is liable independent of the original goodness of the paper; and his responsibility alone is to be looked to. As endorser, he is liable though the note be void. (Chit. on Bills, 156. 3 Day's Cas. 12. 2 Campb. 182. Doug. 633-4.)

This declaration cannot be so modified as to meet a bill of exchange. If it were a bill, drawn by Van Santvoord, the payee, he and his firm would have been acceptors and must have been declared against as such; not as makers of a promissory note. The plaintiffs below could not declare in that form, and now be allowed to amend their declaration, and

fit it to a bill of exchange. The note may have been good against Soulden, and as between him and Van Santvoord; but not beyond these. If it created but an equity against the firm, then the endorsees are the mere assignees of an equity.

The plea clearly amounts to the general issue; and by admitting its truth, the plaintiffs below admitted away their cause of action. Averring that the note was made without the knowledge or consent of Smith, is equivalent precisely to a denial of the promise alleged. If a man acts by my authority, it is by my consent; hence, by denying consent, we·deny all authority. This fact is granted by the replication, which does not insist upon consent or knowledge.

The defendants in error are not *bona fide* assignees. They knew for what the note was given. They knew it was made by Soulden to Van Santvoord. They were fairly put on enquiry, and were bound to ascertain all the circumstances. (Doug. 654. 12 John. 343. 3 Dal. 384. 4 id. 370-1.)

I deny that a partner can make a loan of $5000 to the firm; and afterwards pledge their responsibility, or alter the implied to an express contract, by giving a note or drawing a bill. He must rely on the funds of the concern; and cannot go to their persons. The contrary argument is saying to every man, "If you have a debt due from you to another, do not hesitate to make a note to yourself."

Lawes on Plead. 87, cited by the Supreme Court, does not apply; unless, as they seem to suppose there is a distinction between the one partner and his firm; and the consent of all is not necessary to bind them. The court wrongly suppose that the consent may exist as to the firm, without the consent of each member of the firm. In *Dob* v. *Halsey*, (16 John. 34,) which they also cite, the difference will be found between the law as settled upon this head by the King's Bench, and the Supreme Court of this state. Here, when a creditor sues a firm upon a note or bill, the *onus* of showing the consent lies with him; in England, it will be presumed, till the firm show the contrary. In this state, the authority of one to bind the other members of a firm, must be proved in the first instance by the one who

seeks to charge them ; in England, they stand charged, till they have disproved the authority. The English rule is, an anomaly, in their law of evidence.

I admit this case would have presented a different aspect, if the paper had come to the hands of a *bona fiae* holder for valuable consideration. In *Swan* v. *Steele*, (7 East, 210,) cited by the counsel by the defendants in error, the holders were ignorant of the circumstances under which the note was given.

THE CHANCELLOR. Many parts of this record are not here in question ; and the cause is now to be determined upon those pleadings of the parties which terminated in a demurrer. In considering the questions before the court, I shall apply the terms plaintiffs and defendants, to the parties, as they stood before the Supreme Court.

*Statement of the case.*

The declaration alleges, that the defendants were partners in trade, under the firm of William Soulden and company ; that as partners, they made a promissory note payable to Abraham Van Santvoord ; and that Van Santvoord endorsed the note to the plaintiffs.

The special plea of the defendant Peter Smith, which is now in question, avers, that Van Santvoord to whom the note was made payable, and who is one of the defendants, was a partner of the firm of William Soulden and company when the note was made ; that the note was made by William Soulden, in the name of he firm, to Van Santvoord without the knowledge or consent of Peter Smith, for an account alleged by Van Santvoord to be due from the firm to him ; and that the plaintiffs, when the note was endorsed to them by Van Santvoord, had notice that the note was made by Soulden in the name of the firm payable to Van Santvoord one of the partners, and for what consideration the note was made.

Is this plea a sufficient answer to the declaration?

The declaration states the partnership of the defendants, in the usual form ; the plea admits that they were partners, and upon these allegations, it must be understood that the defendants were general partners in trade. I use the ex-

*Whether the plea is a sufficient answer to the declaration.*

*What the declaration states*

pression general partners, to convey the idea of an ordinary mercantile partnership, in distinction from special cases of limited partnership.

What the plea states. The plea states that the note was given for an account alleged by Van Santvoord to be due to him from the firm An indefinite phrase is here presented, by the terms, an account alleged to be due from the firm; but this is the statement of the defendant, and he does not controvert the allegation which he thus states to have been made by Van Santvoord. The most obvious sense of this part of the plea is, that the partners of Van Santvoord were indebted to him, and that Soulden gave the notice in question, for that debt; and so the plea must be understood.

The origin and nature of the original debt does not appear but the firm were accountable for it to Van Santvoord. The origin and nature of this debt from the partners of Van Santvoord to him do not appear. As nothing peculiar concerning this debt, is stated, it must be understood to have been a just debt, to Van Santvoord from his five partners, which they were bound to pay, and for which they were fully and personally responsible. Van Santvoord might then, have recovered this debt by a suit; he might have assigned it to another person; and any one of the debtors acting for himself and his indebted partners, might have paid it, on behalf of all the debtors.

For it the note was given and was not fraudulent or illegal. For this debt, Soulden, one of the partners, made this promissory note in the name of the firm, to Van Santvoord. I do not perceive, that this transaction was either a fraud, or illegal in itself. No fictitious or new debt was created by Soulden; but for an existing debt he gave the promissory note of the partnership. Van Santvoord could not indeed, be both debtor and creditor, in the same transaction; and as he could not maintain a suit against himself, it is urged, that this note was totally void. But why should this consequence follow? If the note did not bind Van Santvoord why should it not bind the other partners? If Van Santvoord could not maintain a suit against himself, how does that principle produce a penal consequence, that he losses his rights or remedies against others? If the note was void against Van Santvoord, it was so, merely by force of the principle, that he could not be bound as a debtor. where he

V. could not be both debtor and creditor, but this does not avoid the note as to the other partners.

was the creditor; but this principle has no application to the other partners. As this objection to the note relates to Van Santvoord alone, it is reasonable, that the effect of the objection should be confined to him; and that though the note may be void or ineffectual against Van Santvoord, it is not void against the other partners. To consider the note as wholly void, merely because Van Santvoord could have no remedy against himself, would defeat the intention of the act and the justice of the case, when such a decision is not required by any principle of law. To consider the note as binding, all the partners excepting Van Santvoord, is to pursue the truth and justice of the transaction, and to charge the real debtors with their debt to the real creditor. This transaction as it is stated, was free from all fraud; and the fact that Van Santvoord was one of the partners whose firm was used in giving the note, does not in my opinion, invalidate the note against the other partners.

The plea states, that when Van Santvoord endorsed the note to the plaintiffs, they had notice, that the note was made by Soulden in the name of the firm, payable to Van Santvoord one of the partners, and of the consideration for which the note was made. As the facts of which the plaintiffs thus had notice, did not invalidate the note, against Van Santvoord's partners, the knowledge of those facts cannot affect the claim of the plaintiffs against Peter Smith.

*The knowledge averred by the plea does not affect the claim against P Smith.*

The plea of Peter Smith, avers, that this note was made in the name of the firm, without his knowledge or consent. Peter Smith might be bound, without his knowledge of the making of the note, and without his consent to the act. He was one of six partners; each of them had power to act for all the partners; and each partner might bind all, without the knowledge or consent of his associates. This averment is not a denial of the partnership of the defendants, or of the authority of Soulden to act as one of the partners. The sense of the averment is, that Peter Smith was ignorant of the making of the note, and that he gave no consent to that act. But this general partnership was then in full force; and Soulden the partner who made the note, had power to bind Peter Smith, without his know-

*The sense of the plea in averring want of knowledge or consent, &c.*

ALBANY,
Dec. 1825.

Smith
v.
Lusher.

*If the note had been fraudulent, or the claim between the partners had depended on an adjustment of accounts, there would be a legal or equitable defence.*

ledge, and without his consent to the particular act.  This averment therefore, presents an immaterial fact.

If the execution of this note, had been a fraud between Soulden and Van Santvoord ; or if the justice of this claim depended upon an adjustment of accounts between the partners or against them ; a legal or equitable defence would arise from such facts.  But no such fact is alleged.  This plea advances no matter of equitable defence against this action : and the matters alleged in the plea, whether considered separately or taken collectively, afford in my opinion, no legal defence to the cause of action stated in the declaration.  It is therefore unnecessary to examine the replication which was the immediate subject of the demurrer.  The plea being insufficient, in substance, the plaintiffs are entitled to judgment on the demurrer ; and so the Supreme Court have decided.

*Whether the plea is a sufficient bar.*

COLDEN, Senator.  The demurrer of the defendant below, refers us to his plea, and we are to determine whether that be a sufficient bar to the action.

*Statement of the case.*

From the declaration and plea, we may assume the following facts : The defendants in error are *bona fide* endorsees of a promissory note, made by one of several co-partners under their mercantile firm, without the consent or knowledge of Peter Smith, the plaintiff in error, who was one of the partners, payable to one of the firm, or to his order.  It is not alleged that the note was not given for a matter which concerned the partnership.

It was endorsed by the payee to the holders before it became due.

The plaintiff in error, Peter Smith, contends, that under these circumstances, the endorsees ought not to recover on the note.

*Consequences of reversing the judgment.*

If he be right, mercantile operations have been conducted under wrong notions, a great length of time ; and if we reverse the judgment on the principles which the plaintiff in error has attempted to maintain, we shall affect, and render nugatory, a very large portion of the mercantile securi-

ties which are now afloat. For it long has been, and now is the constant practice for one of a co partnership to draw a bill, or make a note in the name of a firm, without the consent or knowledge of one or more of the partners. It often happens that the business of a mercantile concern is conducted by one partner, while his co-partners are in different quarters of the world, and could have no knowledge of the transaction. It is also every day's practice for partners to make a note under their firm, payable to, or to draw a bill on one of the co-partners; and I believe it has never heretofore been questioned but that a *bona fide* endorsee might recover against all the co-partners on such a bill or note; unless it were given for a matter which did not concern the partnership, and that fact was known to the holder at the time of the endorsement.

Where the payment of a bill or note, made in the name of a partnership, is resisted on the ground that it was given in fraud of the partnership, with the knowledge of the holder, it is incumbent on the defendant to plead and prove these facts. There being no averments to this effect in the plea under consideration, we are to presume, as the endorsees had a right to presume, that the note was given for a matter which concerned the partnership.

It appears to me, that in the argument of this case, there has been a mistake in not distinguishing between simple contracts made by a partnership, and other contracts and obligations purporting to be made by several persons.

It is certainly true, as has been insisted, that a man cannot be bound to himself. If three persons were to enter into a bond or covenant to pay to one of the three, I presume no action at law could be maintained on such a specialty. And it is, no doubt, generally true, that one person cannot bind another without his consent; but this general rule does not apply to mercantile concerns.

Promissory notes are on a different footing from other contracts. They are made negotiable by, and when negotiated derive their force and effect from statute. The question then is whether in virtue of the act concerning prom-

---

*Margin notes:*

ALBANY, Dec. 1825.

Smith v. Lusher

It is the constant practice for one partner to draw bills or make notes, in the name of the firm, without the knowledge or assent of his co-partners. So for partners to make a firm note payable to, or draw a bill on one of the partners; and, it seems, not to have been questioned that an endorsee may recover thereon, unless for a matter not concerning the partnership; and that known to the endorsee at the time of the endorsement

A man cannot be bound to himself, and it seems that a bond, &c. by three to one of the three, would not maintain an action.

Difference between promissory notes and other contracts.

Smith
v.
Lusher.

As to the power of P. Smith's partners to make the note.

The power of one partner to bind another, results from the nature of partnership and the law merchant.

Whether a note made by one partner in the name of the firm, for a debt of the firm could be impeached on the ground that it was made against the will of the other partners; and that known to the endorsee? Quere.

issory notes, (1 R. L. 151,) and the law merchant, the defendants in error are not entitled to recover as endorsees of the note described in the declaration, notwithstanding any thing alleged in the plea.

First, as to the power which the other partners had to make the note without the knowledge or consent of Peter Smith.

When Peter Smith entered into partnership, he gave each of his co-partners power to bind him by any promise or agreement which related to the partnership concerns. I do not mean to say, that the power of partners does not extend further, and that all the members of a firm may not be bound by a bill or note given by one partner in the name of all, although it may not have been for a debt of the firm, if an endorsee takes such a note without knowing for what consideration it was made. But it is unnecessary to give any opinion on this point at present.

If it be asked from whence partners derive their power to bind each other? the answer is, it results from the nature of partnerships, and from the law merchant applicable to them. It is no defence for one of several partners to say, he did not assent to the contract, or that it was made without his knowledge. If he expressly dissented, it certainly would not avail, if the party claiming the benefit of the contract did not know that he had dissented. And if the transaction was *bona fide*, and concerned matters which were within the scope, and accustomed dealings of the partnership I doubt whether a plea by one partner; that the endorsee knew when he took a note that it was given against the will of one of the partners, would be a bar to an action on the note.

It seems to me, therefore, that it cannot be questioned, but that Peter Smith's partners, and each of them, had power to bind him by the note in question, although he never assented to the note's being made, and though it was given without his knowledge. So, that if the note had been payable to any other person than to one of the firm, undoubtedly it would have bound all the partners.

But it was payable to Van Santvoord, one of the firm; and the remaining question is, whether that circumstance

should prevent the defendants in error, who are h.s endorsees, from recovering.

ALBANY,
Dec. 1825.

If the note had remained in the hands of Van Santvoord, he could not have sustained any suit upon it. For either he must have sued all the partners, and then it would have been a suit by a man against himself, or he must have sued his co-partners only, and then the note would not have supported his declaration, in which he must have averred that the defendants promised; whereas, the note would show that the promise was by all the partners. These would be technical objections, which would be fatal in a suit at common law, in the name of the payee. Yet there can be no doubt, but that a partner might have relief in a court of Chancery on a note given to him by his co-partners. For certainly a partnership may become indebted to one of the firm; as if there should be a co-partnership for manufacturing and vending linens, and one of the partners should be a farmer. The partnership might well become indebted to him for the raw material, and might bind the firm by a note given for the article furnished. Though the farmer might not be able to maintain his suit at law, he could recover in a court of equity. Such a note in the hands of one of a firm the world has a right to regard as an evidence of a debt due from the firm to the partner, to whom it is given. The endorsee is therefore justifiable in taking the note, although he may know and see upon its face, that his endorser is one of the firm; and when the endorsee brings the action, there are no technical obstacles to his recovery. The suit is not then by a person against himself; and his demand is pursuant to the contract, by which all who compose the firm are bound, and against these his action is brought.

*A suit could not have been sustained by the payee, who was also one of the makers;*

*though he might have relief in equity for a partnership may be indebted to one of the firm, and how; and bind themselves by a note to him good in equity, as between the original parties; and good at law, in the hands of an endorsee.*

That because a suit at common law cannot be supported against the makers of a note, previously to its being negotiated, therefore no suit can be maintained by the *bona fide* holder, after it is endorsed, is a proposition that cannot be sustained. Nothing is more common, than for partners to draw a bill payable to one of the firm. Often bills are made payable to, and drawn upon the makers themselves; and very often bills are made payable to fictitious payees.

*And so though an action will not lie, while the note is with the payee, it may be brought after the note is negotiated.*

ALBANY,
Dec. 1825.

American
Ins. Co.
v.
Whitney.

These bills may be mere waste paper, until they are nego-
tiated; but the moment they are endorsed, they become
efficient securities in the hands of the endorsees.   If it be
asked, by what law do they become so, the answer is, it is
by the *lex mercatoria*, the evidence of which is long, con-
stant and continued usage.   This is the law merchant with
respect to bills of exchange; and by the statute it is pro-
vided that promissory notes "shall have the same effect,
and be negotiable in like manner as inland bills of exchange
according to the custom of merchants."   Since promissory
notes have been put on the footing of bills of exchange they
have, like them, been made payable to the order of one of
the makers, or to the maker's own order.   Our bank notes
are very generally made payable to fictitious payees.   There
is no instance of an objection to the right of *bona fide* en-
dorsees or holders, to recover on such notes.   On the con-
trary the cases cited by the counsel for the plaintiffs below,
show that suits have been maintained on notes so made
and endorsed.

I think the law well settled.   The plea of the defendant
below, in my opinion, is no bar.   I am therefore in favor
of affirming the judgment of the Supreme Court.

*Per totam Curiam,*

Judgment affirmed.