BABCOCK, (SMITH v.)    See Cases Nos. 13,-008 and 13,009.

## Case No. 701.

### BABCOCK v. STONE et al.

[3 McLean, 172.][1]

Circuit Court, D. Illinois. June Term, 1843.

PARTNERSHIP — AUTHORITY OF PARTNER TO BIND FIRM — COMMERCIAL PAPER — PURCHASER WITHOUT NOTICE.

1. Where A, being a partner in two firms, draws a bill by one firm on the other, payable to himself, for his individual debt, and accepted by such firm, [such bill] cannot be recovered [on] by the payee against the drawers or acceptors.

[See note at end of case.]

2. But where in the ordinary course of business, and before the maturity of the bill, it is assigned by the payee, without notice. the payment of the bill, by the indorsee can be enforced.

[See note at end of case.]

3. Where men associate in partnership, they give a credit to the individuals composing the firm, and where a loss must be sustained, it should fall upon those who placed the higher confidence in the fraudulent person.

4. On this ground, where there is no notice of fraud, a partner may often bind his partners, though his act be a fraud on the firm.

[At law. Action by Samuel Babcock against Stone, John B. Glover, and Manning on a bill of exchange. Heard on demurrer to replication. Demurrer overruled, and judgment for plaintiff.]

Thomas & Keating, for defendants.

OPINION OF THE COURT. This action is brought by the plaintiff as the indorsee and holder of the following bill: "Alton, June 9th, 1836. Twelve months after date, pay to the order of John B. Glover, twenty-

[1] [Reported by Hon. John McLean, Circuit Justice.]

seven hundred forty-one dollars ninety-two cents, value received, and charge the same to the account of Stone, Manning & Co." To James Debow & Co., St. Louis, Missouri. Accepted by James Debow & Co., and also indorsed, "Pay to Samuel Babcock, John B. Glover."

The defendants pleaded that the bill of exchange was made by the said John B. Glover, for the purpose of securing an individual debt, and not an account of the firm and partnership of James Debow & Co., or for any indebtment of theirs. That Glover accepted the same in the name of defendants, without the knowledge or consent of his partners, but for the individual benefit of the said Glover. That the plaintiff took the bill, well knowing that it was made and accepted as aforesaid. That the bill was for the individual debt of the said John B. Glover, &c. To this the plaintiff replied, that when the bill was so as aforesaid transferred to him, he did not know that said bill of exchange was drawn by said Glover, in the name of Stone, Manning & Co., and accepted by said Glover, in the name of James Debow & Co., to secure his individual debt, &c. To this replication the defendants demurred.

It is clear that Glover could not have recovered as payee against the drawers or acceptors of this bill. It was created by him, he being a partner of the drawers and acceptors, not to pay a partnership debt, but for his individual benefit. This was a fraud upon his partners. But he negotiated it to Babcock, the plaintiff, who is averred to be an innocent holder, having had, at the time of the indorsement, no notice of the fraud. Being an indorsee without notice, it becomes a question whether he or the partners of Glover shall lose the amount of the bill. The bill was indorsed by Glover to the plaintiff, before its maturity. In Story on Partnership, 161, it is said, "that by forming a partnership, the partners declare themselves to the world satisfied with the good faith and integrity of each other, and impliedly undertake to be responsible for what they will respectively do within the scope of the partnership concerns." On this ground the firm is bound for the frauds committed by one of its partners. Where one of two innocent persons must suffer by the act of a third person, the rule is just, that he shall suffer, who reposed the higher confidence and credit in such person. If the bill had been indorsed to the plaintiff after it was due, or out of the ordinary course of business, or under circumstances calculated to excite suspicion, he could have no right to recover. But none of these facts exist, and he must be considered as an innocent holder, before the bill was due, and without notice of any fact which could render the bill suspicious. The above doctrine is substantially laid down in Jones v. Yates, 9 Barn. & C. 532; Bosanquet v. Wray, 6 Taunt. 597; Aubert v. Maze, 2 Bos. & P. 371; and Smith v. Lusher, 5 Cow. 688.

The demurrer to the replication is overruled. Judgment.

[NOTE. In a recent case before the supreme court, it appeared that one Ferry was a copartner in two firms, both engaged in manufacturing lumber, but at different points in Michigan. He executed notes amounting to over $15,000, in the name of one firm, payable to the order of the other, for his own benefit, and sold them to a bank in another state. The articles of copartnership of the firm appearing as maker provided that no capital was to be diverted to the use of any of the partners, but the copartners had no knowledge of the notes in suit until they matured. In an action by the bank, a bona fide holder, against the maker, a judgment was rendered for plaintiff by the trial court, (see National Exch. Bank v. White, 30 Fed. 412,) but on appeal this judgment was reversed, on the ground that a partnership organized "for the purpose of carrying on the business of sawing lumber, pickets, and lath" is "nontrading" in character, and an individual partner of such a firm has no right, as a matter of law, to execute a note in the name of the firm, without the knowledge of his copartners, in the absence of express authority, or a course of dealing from which such authority can be presumed. Dowling v. Exchange Bank of Boston, 145 U. S. 512, 12 Sup. Ct. 928. Where there are facts tending to establish a course of business implying such authority, the question is one for the jury. Id.]