1840.

Marvin
v.
Bennett.

---

MARVIN *vs.* BENNETT and others.

BENNETT & WILLIAMS *vs.* MARVIN.

Where a lot or farm is sold in gross, or by its boundaries, and is conveyed by a deed containing the words *more or less*, such words being inserted upon deliberation, because neither party professes to know the precise quantity of land conveyed, and it is afterwards found that the quantity of land is less than the parties supposed, the court of chancery will not interfere for the relief of the purchaser; in the absence of any fraud, or intentional misrepresentation, as to the quantity of land contained within the boundaries of the deed.

Courts of equity sometimes give relief in cases of mutual mistakes unaccompanied by fraud, when the property which one party intended to sell and the other intended to buy did not in fact exist; or where the subject matter of the sale and purchase is so materially variant from what the parties supposed it to be, that the substantial object of the sale and purchase entirely fails.

Where a sale of land is consummated by the giving of a deed and the payment of a part of the purchase money, it will not be rescinded on account of a deficiency in the quantity of the land conveyed; especially where the deficiency is very small.

In cases where land is sold at a certain price by the acre, or foot, and it turns out that by the mutual mistake of the parties there is a considerable

deficiency in the quantity, equity sometimes interferes and relieves the purchaser from the payment for the deficiency. But in such cases a slight variation in quantity will not afford a ground for the interference of the court to correct the mistake.

THESE cases came before the chancellor upon appeals by April 21. Asa Marvin, the complainant in the first cause and the defendant in the last, from the decrees of the vice chancellor of the eighth circuit in the said causes respectively. In February, 1832, Bennett & Williams, the complainants in the last cause and two of the defendants in the first, sold to Marvin block No. 98 in Buffalo, being a part of outer lot No. one ; and which in their conveyance thereof to Marvin was described as follows : " Beginning on the northerly line of Water-street, at its intersection with the northerly line of Couteulx-street, as laid down on the said Bennett & Williams' map, thence running northwesterly on the same line of Water-street, to the southeasterly corner of outer lot No. 2 in the said village of Buffalo, thence northeasterly along the southeasterly line of the said outer lot No. 2 to the southwesterly line of Fly-street as laid down on said map, thence southeasterly on the same line of Fly-street to its intersection with the northwesterly line of the said Le Couteulx-street, thence southwesterly on the same line of Le Couteulx-street to Water-street, the place of beginning, be the same more or less." At the time of the purchase of this block, Marvin gave to Bennett & Williams a bond and mortgage upon the premises for $6000, one half of the purchase money, with interest ; the interest payable semi-annually, and the principal in six annual payments, commencing on the first of November, 1833. He also gave to them two promissory notes of $3000 each, one of which notes was subsequently paid by him. When the other note became due, or a short time previous thereto, he paid $1000 and the interest on the note and gave a new note to Williams for the remaining $2000 ; which last mentioned note was afterwards discounted by the Bank of Buffalo for the benefit of Williams, and when it became due it was protested for non-payment.

1840.

Marvin
v.
Bennett.

The object of the complainant's bill in the first of the above causes was to rescind the sale, on account of an alleged fraud and deception as to the quantity of land contained in the block conveyed to him, and to restrain the collection of the bond and mortgage and the $2000 note ; the complainant charging in his bill that at the time of the sale and conveyance, the defendant Bennett falsely alleged that the block was 136 feet in width on Water-street and $128\frac{1}{2}$ feet on Fly-street, when it was in fact only 119 feet on the first mentioned street and 97 on Fly-street. The bill in the last suit was filed for the foreclosure of the mortgage given for the half of the purchase money. Both causes were heard upon pleadings and proofs ; and the testimony in both suits was substantially the same ; the testimony taken in the first suit being used in the last, under a stipulation to that effect.

The cause was heard upon pleadings and proofs. And the vice chancellor directed the bill in the first cause to be dismissed with costs, and made the usual decree for a foreclosure and sale in the last cause.

The following opinion was delivered by the vice chancellor in the first cause :

GARDNER, V. C. The claim to relief in this case is founded exclusively upon the alleged misrepresentation of the defendant Bennett, prior to the sale, as to the quantity of land embraced in the lot in controversy. Fraud is not imputed to the defendants. It was not contended that the misrepresentation was intentional. But it was insisted that proof of the misrepresentation alone would entitle the complainant to a decree for damages, or to rescind the contract in the discretion of the court. There are undoubtedly cases of misrepresentation, honestly made, in which the court could and ought to afford relief. But it is as I apprehend, in those cases only where the false representation lays the foundation for mistake, either in the agreement itself, or the contract which is the evidence of the agreement.

Where this occurs, the misrepresentation, or rather the mistake which is the consequence of the misrepresentation, may be rectified, either by rescinding the agreement itself, or by conforming the written contract to the agreement, according to the circumstances. The case of *Bingham* v. *Bingham*, (1 *Vesey*, *sen.* 126,) falls within the first class of cases to which I have alluded. A. purchased an estate of B., which was in fact the estate of A. The sale was rescinded and B. was decreed to refund the purchase money. In the case cited, A. certainly did not intend to buy, nor did B. intend to sell the land of A. Strictly speaking there was no agreement, whatever the form of the contract was ; and this was very properly rescinded. On the other hand, the books are full of cases where the court has granted relief, by amending or giving effect to a defective conveyance or contract, where the agreement upon which it was founded is admitted, or is established by satisfactory proof.

The question then will be, whether the proofs in this cause bring this within the principles settled in either class of the adjudged cases. In the first place, what was the true agreement between these parties ? The negotiation was for the sale and purchase of a block of land fronting on Water-street in the city of Buffalo. Before the conveyance was drawn, it was suggested to the defendant Bennett that the deed should specify that the lot extended 140 feet upon Water-street. This was declined. It was then proposed that 136 feet should be inserted in the deed. This also was refused ; the defendant insisting that by inserting the metes and bounds, the entire lot would be conveyed. It will make no difference, was the expression of the defendant, provided you fix the two points, if there be *more or less;* but it will convey the whole. And he then proceeded to assign as a reason why the lot would hold out, that the land conveyed by the Holland Company universally overruns. The complainant persisted in his objections, and the negotiation was suspended. An interview in private took place between him and his son, the

witness; after which the proposition of the defendant was accepted and the deed executed.

It is impossible to review this testimony without coming to the conclusion, that the risk as to the quantity of the land constituted one of the elements of the agreement between the parties; and this fact will be found to constitute the essential difference between this case and those which have been cited by the complainant. The attention of the complainant was distinctly called to this point, and by his agreement he deliberately assumed the hazard of the loss in quantity; as he would have been entitled to all the advantage in case the land had exceeded the quantity supposed. And the deed states this agreement truly according to the intention of the parties.

There has been, therefore, no mistake of which this court can take cognizance. (3 *Paige's Rep.* 99.) The most that can be said is, that the complainant has been disappointed. He had the data before him; he knew the opinion and belief of the defendants founded thereon and honestly expressed; and from these, he could and did make his own calculations. And as there has been no fraud or concealment, he must abide the consequences.

The whole bill is framed with a view to relief against a fraud practiced by the defendants—not upon the ground of mistake, nor upon that anomalous ground of misrepresentation without fraud, or mistake in the true sense of that term as recognized in equity. But even if the bill were properly framed, the merits of the case, upon the proofs, are decidedly with the defendants; even if the deficiency in the quantity of the land were fully established. The evidence upon that point, however, is altogether too doubtful to authorize the rescinding of this contract, even if the complainant was right in the position assumed by his counsel upon the argument.

The bill must be dismissed with costs.

*Le Grand Marvin & M. T. Reynolds,* for the appellant. The proofs show that Bennett & Williams represented that

the block of lots described in the pleadings was not less than 136 feet on Water-street and 128½ on Fly-street, and that the defendant purchased solely on that representation. The proofs show a deficiency in the number of feet on Water-street and on Fly-street.    The facts being ascertained, fraud is a question of law, and Bennett & Williams were guilty of a legal if not an actual fraud in misrepresenting the size of the block. (*Pearson* v. *Morgan*, 2 *Bro. C. C.* 388, 9. 1 *Id.* 543. *Hobbs* v. *Norton*, 1 *Vernon*, 136. *S. C.*, 2 *Cas. in Ch.* 128. *Dyre* v. *Dyre*, *Id.* 108. *Seymour* v. *Delancy*, 3 *Cowen*, 445, 518. *Jeremy's Eq. Jur.* 386. *Jackson, ex dem. Cadwell,* v. *King*, 4 *Cowen*, 207, 220, 221. *Rosevelt* v. *Fulton*, 2 *Cowen*, 129. *Gillespie* v. *Moon*, 2 *John. Ch. Rep.* 585. *Machir* v. *McDowal*, 4 *Bibb*, 473. *Butler* v. *Haskell*, 4 *Dessaus.* 651, 684, 685, 687. 1 *Id.* 433, 4.) Whether Bennett & Williams were guilty of a fraud or not, having made a representation upon which Asa Marvin had a right to rely, and did rely, and which has proved to be false, they are bound to make good their representations. (*White* v. *Champion*, 5 *Cowen*, 509, 510, 512.) As Bennett & Williams come into court to enforce the payment of their mortgage, Asa Marvin may set up any matter which shows either that the mortgage is wholly or partially paid, or that nothing or less than the face of it is due to Bennett & Williams. There should be a reference to a master to ascertain how much less the block in question was actually worth, at the time of the sale, than it would have been had it held out according to the representations.

*T. T. Sherwood & S. Stevens,* for the respondents. There is not evidence sufficient in the cause to show that Bennett & Williams, or either of them, knew or represented to the complainant that the block of land mentioned in the complainant's bill was 136 feet in front on Water-street, or what the particular extent of it was on any street. The deed in express terms conveys a block of land by certain metes and bounds, *more or less.* Parol proof cannot be admitted to contradict or substantially vary it. (1

John. Ch. Rep. 425, 429. Id. 339, 423. 2 Id. 557. Hop-
kins' Rep. 124 to 135.) If statements in regard to the
extent of the lot were made, they were the mere expres-
sion of an opinion, and the grounds of which were at the
time honestly given and understood by the complainant.
They were not fraudulent representations, nor are the de-
fendants liable in any manner to account for those state-
ments. Representations made in good faith could not af-
fect the validity of a deed. (*Governeur* v. *Elmendorf*, 5
*John. Ch. Rep.* 179. 2 *Kent's Com.* 482, 484 to 489.
*Abbott* v. *Allen*, 2 *John. Ch. Rep.* 519 to 525. *Cooper*,
308, 313.) If the defendants made representations hon-
estly in relation to the extent of the lot, and it should turn
out that they were mistaken, the complainant would not
have any remedy in this court, but must wait an eviction
and resort to a suit at law on the covenant in his deed. (5
*John. Ch. Rep.* 79.) The premises were conveyed by
Bennett & Williams to the complainant by a deed describ-
ing them expressly by metes and bounds, and containing
the words *more or less.* Parol evidence cannot therefore be
received to show that the quantity of land intended to be
conveyed was greater, or different from what would pass by
the terms of the deed. (1 *John. Ch. Rep.* 425 to 429. *Id.*
231. *Id.* 339, 423. *Hopk.* 124 to 135.) All the facts
in relation to the title were either matters of record in the
county of Erie, or of general and public notoriety, and the
complainant was bound to take notice of them. (*Abbot* v.
*Allan*, 2 *John. Ch. Rep.* 523. 2 *Kent's Com.* 484, 5.)
Chancery makes a distinction where complainants come
into court to enforce a specific performance, and where it
is sought to set aside or annul a contract. (2 *Kent's Com.*
487, *and note B.* 6 *John. Ch. Rep.* 222.) The block of
land conveyed contains all the land which the complainant
contends it ought to contain.

THE CHANCELLOR. The whole difficulty in this case,
relative to the quantity of land in block No. 98, unques-
tionably arises from the change in the width of Cazenovia

*1840.*

*Marvin*
*v.*
*Bennett.*

terrace from sixteen to twelve rods. But if that change took place subsequent to the conveyance of outer lot No. 2, to Benjamin Elliott, in April, 1810, it is evident from the testimony of Baldwin that Marvin will have his full width of 136 feet on Water street; before he reaches the southeasterly corner of outer lot No. 2, as the same was described and conveyed in the deed of April, 1810. That lot begins, according to the original field notes, at Vollenhoven's avenue, now Erie street, in the western bounds of Cazenovia Terrace, and runs south eight degrees west, seven chains and fifty-one links to outer lot No. 1; thence bounding on outer lot No. 1, south fifty-two degrees fifty-five minutes west, twelve chains thirty links. As this last line is not parallel to Vollenhoven's avenue, but diverges from it as you proceed towards Water street, it is evident if you start one chain south of the original west bounds of Cazenovia Terrace, (as Baldwin did,) at what is now the intersection of Erie street and the Terrace, and run the courses and distances indicated in the deed of 1810, you will throw the line between outer lots No. 1 and 2 further south than the true line between those lots; as it is described in the deeds to Benjamin Elliott and Louis Le Couteulx, and in the diagrams annexed to those deeds.

The testimony of Peacock is that the Terrace, as originally surveyed on the ground, was four chains wide; and that when it was contracted to three chains the other one chain was considered a part of the outer lots. Then, if I understand his testimony, this was intended to be a mere enlargement of the outer lots bounding on the Terrace; and was not intended to alter any of the other lines of those lots as they were originally run out and marked upon the land. Landon's and Lay's depositions likewise show that the Terrace was originally laid out four chains in width. And they are corroborated by Baldwin's survey, when examined in connection with the diagrams annexed to the deed of 1821, as well as to the original contract of 1806 from the Holland Company to Le Couteulx. By those diagrams it will be seen that the distance from

the Terrace, on the short line of lot No. 1, on Cayuga street, now Pearl street, is laid down as but two chains; while Baldwin's survey makes the distance from the angle at Pearl and Commercial streets to the present west line of the Terrace 188 feet; or nearly three chains. I think there can be very little doubt, therefore, that the true line between outer lots No. 1 and 2, and to which B. Elliott and Louis Le Couteulx were entitled to hold according to their respective deeds, will give to Marvin his full complement of land between that line and Le Couteulx street.

In this view of the case it can hardly be necessary to examine the question whether Marvin was entitled to any relief upon the supposition that his surveyor was right in the location of that line, by taking the present corner of Erie street and the Terrace as a starting point; instead of the original intersection of the western line of the sixteen rod Terrace with the southerly line of Vollenhoven's avenue. Upon that subject, however, it may be proper to say that there is nothing in the case from which any intentional fraud or deception could be imputed to Bennett and Williams, or either of them; even if it had turned out that the width of the lot was not so great as Bennett stated the same to be, with reference to the map.

From the testimony of Le Grand Marvin it is evident that his father, as well as himself, was aware of the fact that Bennett did not profess to state the distance upon Water street, between Le Couteulx street and the line of outer lot No. 2, as a matter within his own knowledge, or which had been ascertained by him by an actual admeasurement. And as he absolutely refused to have any distance inserted in the deed, but merely to bound the block upon the line of that lot, with the addition of the expression " be the same more or less," Marvin should have refused to complete the bargain until the line had been actually run out and ascertained, if he did not intend to consent to take the lot by the description contained in the *deed itself.*

Neither is this a case in which the court will give renei to the party upon the ground of a mutual mistake.   Courts of equity sometimes give relief in cases of mutual mistakes, unaccompanied by fraud, when the property which one party intended to sell and the other intended to buy did not in fact exist; or where the subject matter of the sale and purchase is so materially variant from what the parties supposed it to be that the substantial object of the sale and purchase entirely fails.   The decision of this court and of the court for the correction of errors in the case of *Rosevelt & Fulton's executors*, (5 *John. Ch. Rep.* 274, 2 *Cowen*, 129,) must have proceeded upon that ground; as there was no evidence to sustain an allegation of intentional fraud, or misrepresentation in that case.   But I am not aware of any case in which a sale of land, actually consummated by the giving of a deed and the payment of a part of the purchase money, has been rescinded for a mere deficiency in the quantity of the land conveyed; amounting, as in this case, to less than one eighth of the quantity of land the purchaser supposed he was buying; admitting the complainant Marvin is right in the location of the line of outer lot No. 2.   Where land is sold at a certain price by the acre, or foot, and it turns out that by the mutual mistake of the parties there is a considerable deficiency in the quantity, courts of equity have so far interfered in some cases as to relieve the purchaser from the payment for the deficiency.   But even in such cases a slight variation in quantity will not afford a ground for the interference of this court to correct the mistake.   And where a lot or farm is sold in gross, or by its boundaries, and is conveyed by a deed containing the words " more or less," such words being inserted upon deliberation, as in this case, because neither party professed to know the precise quantity contained within the boundaries of the deed, certainly no court ought to interfere to make a new contract for the parties which they did not think proper to make for themselves; unless upon clear evidence of fraud or intentional misrepresentation.   Here was certainly no mistake in the

deed itself; as Bennett distinctly refused to have any distance inserted in the deed, as the length of the line upon Water street. Marvin, therefore, who was informed of this fact, if he wished to reserve the right to have the mistake corrected in case the distance did not hold out to be as much as Bennett supposed it to be, instead of adopting a secret resolution to take the deed as it was drawn and to hold Bennett to his statement as to the quantity, should have communicated that resolution to Bennett, and have required of him a written stipulation to that effect.

Upon the whole case, therefore, I think the decision of the vice chancellor was clearly right. His decree in each of these causes must therefore be affirmed with costs. And the decree in the foreclosure cause must be remitted to the vice chancellor of the eighth circuit with directions to order a reference to ascertain the whole amount which has now become due upon the bond and mortgage, and to direct a sale for the whole sum due; with a decree over against the mortgagor for the deficiency, if any there should be.