## HARRELL VS. HILL.

A vendor of land executed a bond of conveyance to the vendee, describing the land by section, locality, and as the farm on which he resided, and as containing "one hundred and eighty acres, more or less." *Held*, That the words: "one hundred and eighty acres, more or less," were but descriptive of the premises designed to be conveyed, and not a covenant as to quantity.

A court of chancery will not grant relief to the purchaser, where the words "more or less," or the like, are used in describing the quantity of land sold, if the difference between the actual quantity and that represented be small and inconsiderable; but if the quantity be considerably less than stated, the purchaser will be entitled to an abatement in the price.

Where a bill in chancery charges misrepresentation and fraud by the defendant in a sale of land, evidenced by written contract, and the fraud and misrepresentation are denied in the answer, no principle of law is violated by the admission of parol evidence to establish the fraud.

The defendant sold to the complainant a tract of land, lying on the bank of a river, for the gross sum of $1500, representing it to contain 180 acres, *more or less*, but stating that a portion of it had fallen into the river. The tract contained, by measurement, only 102 acres; the complainant was deceived, as to the quantity, by the

misrepresentation of the defendant; the tract had previously been given in, by the defendant, for assessment as containing 120 acres; *Held,* That the complainant was entitled to an abatement for the difference between the quantity represented and 120 acres.

The general rule is that when a misrepresentation is made as to quantity, though innocently, the right of the purchaser is to have what the vendor can give with abatement of the purchase money for so much as the quantity falls short of the representation; and such abatement ought to be in proportion to the price given for the whole tract as represented, without regard to any other evidence of the value of the land.

*Appeal from the Chancery Court for Pulaski County.*

Hon. HULBERT F. FAIRCHILD, Chancellor.

S. H. HEMPSTEAD for the appellant.

1. By the contract Hill represented the tract in question to contain 180 acres more or less, and upon actual survey there was a deficiency of 84 acres, nearly one-half, and the purchaser is entitled to an abatement in the purchase money to the extent of the deficiency. *Hill vs. Buckley,* 17 *Vesey jr.* 394; 1 *Sugden* 525, 526, 511; *Waters vs. Travis,* 9 *J. R.* 465; 1 *Vesey jr.* 218; 10 *Vesey jr.* 315; 1 *Bro. Ch. Rep.* 140; 2 *Bro. Ch. Rep.* 118, 326. And this whether the representation was innocently or willfully made. 1 *Story's Eq.* 193; *Taylor vs. Fleet,* 1 *Barb. S. C. R.* 472; *Doggett vs. Emmerson,* 3 *Story's R.* 733.

The words "*more or less*" should be restricted to a reasonable allowance for small errors in surveys, and for variation of instruments. *Hoffman vs. Johnson,* 1 *Bland. Ch. Rep.* 109; *Thomas vs. Perry,* 1 *Pet. C. C. R.* 49; 1 *Sugden* 527, 528, 529; *Portman vs. Mill,* 2 *Russ.* 570.

2. Parol evidence not admissible to controvert written instruments. 5 *Yerg.* 470; 15 *Ves.* 516; 1 *Barb. S. C. R.* 469.

BERTRAND, for the appellee.

1. In the construction of contracts, Courts should favor the construction which is obviously most just. *Holloway vs. Lacy,* 4 *Humph.* 468.

2. In the construction of agreements and covenants, the intention of the parties is principally to be attended to, and Courts will look to the whole deed, and infer from that the real intention of the parties. 2 *Bos. & Pull.* 26.

3. Where land is sold in *gross*, a grantor is not liable for a deficiency in the quantity. 2 *John. R.* 37; 1 *S. & R.* 166.

Mr. Justice HANLY delivered the opinion of the Court.

Bill in equity for a fraudulent misrepresentation in the sale of a farm, or tract of land, as to the quantity; an injunction as to the unpaid purchase money, to the value of the deficit, and specific performance in respect to the quantity really existing.

On the 3d February, 1854, the parties entered into a written contract, whereby the defendant agreed to convey to the complainant, a farm in Pulaski county, for the price and consideration of the gross sum of $1,500; part to be paid in cash, and the residue to be paid on the 1st February, 1855; at which time, a deed was to be made. The contract described the land to be conveyed as being " a certain tract or parcel of land, lying on the Arkansas river, below Little Rock, and known on the books of the public surveys, as part of sections No. 13 and 20; it being the place where the said Hill resides, joining the lands of James Jones, Jacob Jones, and those of the Milliner estate. *
* * * * * It is expressly agreed and understood, that it is all the land owned, or in anywise appertaining to the tract now owned by said Hill, *one hundred and eighty acres, more or less.*"

It appears from the bill, that neither at the time of the contract nor before its execution, did measurement of the land take place, but the tract was affirmed by the defendant to the complainant, to contain 180 acres, and the complainant giving entire credit to the affirmation, paid $950, and gave her note for the residue of the consideration, which is the amount of the judgment enjoined; alleging farther, in point of fact, that the tract, upon a recent survey, contains only 96 acres, making the deficiency in the quantity 84 acres.

The bill seeks compensation, or an abatement of the price,

for the asserted deficiency, taking into view, as the basis, the quantity as represented, 180 acres, and the gross price agreed upon for that quantity, $1,500; and rating the value of the deficient quantity in that proportion, upon the ground, that the representation, that the tract contained 180 acres, was false and was made fraudulently and deceitfully by the defendant at the time of the execution of the contract in question, and was implicitly confided in by the complainant. The bill, besides praying an injunction, an account and specific performance, also prays for general relief.

The answer, in the most explicit manner, negatives any fraud and misrepresentation, and asserts that the land was sold in gross at $1,500 for the tract, accounts for the deficiency in quantity, as alleged in the bill, by attributing it to the abrasions of the Arkansas river, alleging that his knowledge of the fact, that some had fallen into the river, is the reason why he absolutely refused and declined to warrant the tract as to quantity, which he communicated to complainant before the contract was made.

The complainant interposed a general replication to the defendant's answer.

The cause was set for hearing in the Court below on the bill, answer, replication and proof, and at the hearing, the following facts were made to appear in proof.

*Trigg* swore, that some short time before the sale to complainant, defendant came to him and said he understood that Rector, witness' half-brother, wanted to purchase a place in the county, and proposed to sell his, which he, defendant, represented to witness, contained 160 or 180 acres, which witness did not remember. Hearing that complainant wished to buy such a farm, witness communicated to her what defendant had told him, respecting his.

*John M. Harrell*, at the request of his mother, the complainant, on the day before the sale, went down to the farm for the purpose of examining the land as to quality and locality—was shown a portion of the lines—was told by defendant that the

7

tract had formerly caved a little, but that it had ceased, and that it contained 180 acres, or very nearly that quantity. He heard him make the same statements to the complainant; and the witness also told complainant all that had been said to him by defendant, respecting the quantity. He further stated the deficiency was not discovered until about the 5th April, 1855, a few days before this suit was brought, and then only by actual admeasurement; when it was ascertained the tract only contained 96 acres, as computed by the county surveyor, showing a deficit of 84 acres in the tract, as represented by the defendant.

*M E. Harrell* testified she was present when complainant and defendant were conferring about the land in question, and heard defendant say that the place had " *caved* " a little, but that there still remained about 180 acres. Knows that complainant would not have bought had she not thought the place contained the number of acres represented.

*Peay* testified he was clerk of Pulaski county—that as such, he has examined the official plats of the public surveys made by the United States, filed in his office, and furnished by the Surveyor General of this State, and it appears from them, that the N. W. fr. ¼ of Sec. 13, Town. 1 N., Range 11 West, contained, at the time it was originally surveyed, 123 84-100 acres.

*Hutchins*, clerk in the Auditor's office, gave his certificate to the effect, that it appeared from the records of his office, that the lands sold by defendant to complainant, were assessed to the defendant, for the years 1851 and 1852, as containing 120 acres, and as being of the value of $3 per acre, without the improvements, which were assessed separately at $500.

*Webb*, the County Surveyor, testified that he, on the 5th April, 1855, at the instance of complainant, made a survey and measurement of the land in question, and found it to contain but 96 acres. Thinks three or four acres may have caved into the river by the spring rise of 1854, which occurred after complainant bought.

There were several other witnesses who testified in the cause;

some four of them heard complainant, after the purchase of the land, say " she had bought it for a gross price, and had agreed to take it *just as it was* as to quantity, be there *more or less*— that defendant had told her, before the purchase, that the tract was subject to *cave, or fall in*—that he did not know the precise quantity of acres in the tract. There were also three or four witnesses, who testified that defendant had resided on the land for fifteen or twenty years—that it was worth, at the time of sale, from $15 to $30 per acre—that about five acres must have fallen or caved into the river, during the rise of 1854, after the complainant bought; they furthermore testified, they had known defendant for many years, and that he uniformly bore the character of being an honest, upright, truthful, just and conscientious man.

On this state of pleading and evidence, the Chancellor, at the hearing, dismissed the bill, dissolved the injunction, and decreed cost against complainant, from which she has appealed to this Court, and insists here, it should be reversed, and that she is entitled to the relief prayed for.

We propose to consider this cause under the following enquiries.

1. Did the defendant covenant to convey to the complainant any given number of acres?

2. Under the pleadings, have we a right to look beyond the bond of defendant, to determine the issue between the parties?

3. Does the proof show a deficiency in the acres agreed to be conveyed?

4. If there is a deficiency in the quantity, has the complainant shown herself entitled to any compensation therefor?

1. In answering this question, it will be necessary for us to recur to the covenant. By reference to that, it will be perceived the defendant agreed to convey to complainant, for a gross sum, $1,500, a certain farm or tract of land, " lying on the Arkansas river, below Little Rock, and known on the books of the public surveys, as part of sections 13 and 20, it being the place whereon the said Hill resides, and joining the lands of James

Jones, Jacob Jones, and those of the Milliner estate, etc.    *    *
*    *    It is expressly agreed and understood, that it is all the
land owned, or in anywise appertaining to the tract now owned
by said Hill, 180 *acres, more or less."*    A question necessarily
arises in this connection, as to whether the quantity stated or
expressed, is to be regarded as a part of the description, or does
the statement of the quantity import a covenant to convey the
number of acres designated?    To determine this we have to
have recourse to certain rules which have been prescribed for
the purpose, *e. g.*: In the description of land conveyed, the
rule is, that known and fixed monuments control courses and
distances.    So, the certainty of metes and bounds will include
and pass all the lands within them, though they vary from the
given quantity included in the deed.    The least certain and
material parts of the description must yield to those which are
the most certain and material, if they cannot be reconciled;
though in construing deeds, the courts will give effect to every
part of the description, if possible.    The mention of quantity
of acres, after a certain description of the subject by metes and
bounds, or by other known specifications, is but matter of
description, and does not amount to any covenant, or afford
ground for the breach of any of the usual covenants, though
the quantity of acres should fall short of the given amount.
See *4th Kent's Com.* (*7th edition,*) 514, 516; *Mann vs. Pearson,*
2 *Johns. Rep.* 27; *Smith vs. Evans,* 6 *Bing. Rep.* 102; *Doe ex
dem., etc, vs. Porter,* 3 *Ark.* 18, 57; *Powell vs. Cook,* 5 *Mass. Rep.*
36, 37; *Jackson vs. Moon,* 5 *Cow. Rep.* 706; *Allison vs. Allison,* 1
*Yerg. Rep.* 16; 1 *Aiken's Rep.* 325; *Roat vs. Puff,* 3 *Barb. S. C.
Rep.* 353.    In this latter case, the deed contained the language:
" There being in the lot conveyed, 135 acres, *strict measure,"*
etc., yet it was held there was no covenant to make up the
deficiency.    In the case before us, the covenant contains as full
a description of the premises by metes and bounds, as it is pre-
sumed it was convenient for the defendant to give at the
time it was executed, and the quantity, 180, being expressed or
mentioned after this more certain or definite description, must

be regarded as merely part of the description, and not to amount to any covenant as to that precise quantity. Besides this, whenever it appears, by definite boundaries, or by words of qualification, as "more or less," or as "containing by estimation," or the like, that the statement of the quantity of acres in the deed is mere matter of description and not of the essence of the contract, as a general rule, the buyer takes the risk of the quantity, if there be *no intermixture of fraud in the case.* See *Stebbins vs. Eddy*, 4th *Mason's Rep.* 414; *Marvin vs. Bennett*, 8 *Paige Rep.* 312; *Same case*, 26 *Wend. Rep.* 169; *Weaver vs. Carter*, 10 *Leigh Rep.* 37; *Eubank vs. Hampton*, 1 *Dana* 343, 344; *Brown vs. Parish*, 2 *Ib.* 9; *Jackson vs. McConnell*, 19 *Wend.* 175; *Jackson vs. Moon*, 6 *Cow.* 706; *Lush vs. Druse*, 4 *Wend.* 313; *Pedeus vs. Owens*, *Rice's Eq.* 55; *Wicker vs. Crews*, 1 *Iredell Eq.* 351; *Nelson vs. Matthews*, 2 *Hen. & Munf.* 634; *Cleveland vs. Rogers*, 1 *A. K. Marsh.* 193; *Fleet vs. Hawkins*, 6 *Munf.* 188; *Perkins vs. Webster*, 2 *N. Hamp.* 287; 6 *Serg. & Raw.* 488; *Williford vs. Galbraith*, 6 *Watts* 117.

Looking alone to the face of the bond or covenant, we are constrained to hold, that the defendant did not covenant as to quantity, maintaining as we do, that the specification of 180 acres in the instrument, was but descriptive of the premises designed to be conveyed under the conditions of the bond. But, notwithstanding he did not covenant to convey the *precise* quantity of 180 acres, yet it has become the settled doctrine of the Courts of Chancery in this country, as well as in Great Britain, to relieve, when there is a very great difference (as thirty-three per cent., for instance,) between the actual and the estimated quantity of acres of land sold in gross, on the ground of *gross mistake*. See 4 *Kent Com.* (7 *edition*,) 517, *note*; 1 *Sug. on Vend.* 434, *note*; *Quesnel vs. Woodlief*, 2 *Hen. & Munf.* 173, *note*; *Nelson vs. Matthews*, *Ib.* 164; *Harrison vs. Talbott*, 2 *Dana* 258. In this last case, the series of Kentucky decisions on the subject, are very ably reviewed by Ch. J. ROBINSON. See, also, *Golden vs. Maupin*, 2 *J. J. Marsh.* 239; *Ellomas vs. Perry*, 1 *Pet. Cir. Ct. Rep.* 49. We are aware, however, that there are

many cases to be found in the books of reports, in which a different doctrine is maintained, and seemingly too, upon well established principles, as, for instance, in *Hill vs. Cunningham's Ex'rs*, 1 *Munf.* 330; *Twiford vs. Wareup, Finch* 311; *Winch vs. Winchester*, 1 *Vez. & Beame* 375; *Smith vs. Evans*, 6 *Binn.* 109; *Boar vs. McCormick*, 1 *Serg. & Raw.* 166; *Glen vs. Glen*, 4 *Ib.* 488; and also in *Stebbins vs. Eddy, ubi sup.*, in which Mr. Justice STORY says: " It seems to me there is much good sense in holding that the words, ' more or less,' or equivalent words, used in contracts or conveyances of this sort, should be so construed to qualify the representation of quantity in such a manner, that, *if made in good faith*, neither party should be entitled to any relief on account of a deficiency or surplus, * * * I do not say cases may not occur of such extreme deficiency as to call for relief; but they must be such as would naturally *raise the presumption of fraud, imposition or mistake in the very essence of the contract.*"

We are inclined to hold to the doctrine first stated, *i. e.* that the effect of the words " more or less," added to the statement of quantity, can only be considered as intending to cover *inconsiderable* or *small* differences, the one way or the other, and particularly so in the case before us, for the reason that the contract of the defendant with the complainant in regard to the land, was and is an *executory one*, being yet *in fieri*, the general opinion being in such case that the purchaser, if the quantity be considerably less than it was stated, will be entitled to an abatement, although the agreement contain the words " *more or less*" or " by estimation:" see 1, *Sug. on Vend.*, 433, *note* 2; *Hill vs. Buckley*, 17, *Ves.* 394.

Without reference or regard to the testimony respecting the representations of the defendant, as to the quantity of the tract of land in question, but looking to the contract alone, in connection with the fact of the deficiency in the quantity, and the extent of this deficiency, being nearly one half of the whole quantity stated in the contract, we think there can be no doubt

but that complainant was entitled to some abatement on account of the deficiency.

2. To answer this question properly, we must recur to the bill. The charge is, that defendant misrepresented the quantity to the complainant, who having confidence in his honesty, integrity, and truthfulness, was deceived and defrauded thereby, etc. The charge, then, is fraud, against the defendant. The facts stated in the bill by way of inducement to the fraud charged, as well as the fraud itself, are all, and each of them is denied, in the most explicit and positive manner, by the defendant in his answer. There is an issue, then, on the record, of fraud or no fraud. If the issue be sustained on the part of the complainant, the establishment of *fraud* works a total abrogation of the contract to the extent of the fraud proved, and no rule or principle of law is violated by the admission of parol evidence to establish fraud, going to the consideration or execution of deeds. We hold, then, that the testimony tending to show misrepresentation and fraud on the part of the defendant was competent and perfectly legitimate under the state of pleadings existing upon the record.

3. We have already answered this question, as far as pertains to the pleadings, in the affirmative, when considering and answering the first one. We will now proceed to answer it in reference to the proof, leaving out of view and question the pleading, and in doing so, propose to consider it under the following heads.

Was complainant deceived by the misrepresentations of the defendant? We think there can be no doubt of the fact. The testimony of the two witnesses, Harrell, is conclusive upon this point. They state, emphatically, that complainant would not have purchased the land if she had not believed the tract contained in and about the quantity represented, 180 acres. That it would not have answered her, nor sufficed for the number of hands she designed to employ. But it may be asked, whether her declarations to the four witnesses, who testified to her entire satisfaction with the bargain, and that she had taken the farm

" *just as it was,*" *etc.,* do not rebut the idea of her being deceived? In response to this we unhesitatingly say not; for it must be borne in mind that those declarations and statements were made to those witnesses a few days after the purchase—long prior to the time at which she discovered the " *gross deficiency,*" and whilst she felt secure in the good faith of the defendant, arising from her knowledge of the high character he possessed with the community in which he had so long resided, for truthfulness, honesty and integrity. Her statement, that she had purchased the farm " *just as it was,*" was but a reiteration of the legal effect of the bond made to her by the defendant. The taking of the bond in this way and her declarations, consequent thereupon, made to the witnesses, we are constrained to believe, were alone superinduced by the confidence she reposed in the defendant, and the abiding faith she had in his representations made to her in respect to the quantity of acres the farm contained.

Were the representations of the defendant made to the complainant, in respect to the quantity of acres, false? There can be no doubt of this fact. Webb, the county surveyor, testifies that upon actual measurement made about the 5th April, 1855, it was found to contain only 96 acres. He is positive that not more than from 3 to 5 acres could have fallen into the river since the complainant's purchase, on the 3rd of February, 1854, and it seems that none of the other witnesses, who testify as to abrasions, make the loss, from that cause, more than from 3 to 6 acres. So that it may be safely assumed that there were not more than 102 acres in the tract when complainant purchased it.

Were these false representations made knowingly by the defendant? We think the record furnishes facts which leave but little doubt of this, notwithstanding the defendant's answer to the contrary. Let us appeal to those facts. In the first place, it is in proof that the defendant resided on the premises in question for the twenty years next before the sale—was conversant with the lines including his farm—was aware that the river bank in front had been addicted to " caving" for some

years before the sale, and in addition to all this, absolutely gave these lands in to the assessor of Pulaski county, for the years 1851, and 1852, as containing only 120 acres! as the certificate of Hutchins clearly establishes. But this is not all. We have it from the the testimony of Mr. Peay, the clerk of the Circuit and county Courts of Pulaski county, that it appears from official records in his office that the lands in question never did contain over123 84-100 acres! even when they were first laid off by the United States authority. If these lands had been entered by the defendant, or if not entered by him but purchased by him from a person other than the government, why did he not introduce, at the hearing, his patent, his certificate of entry, or his deed, and show from it that his muniment of title called for 180 acres, and thereby explain the cause of his mistake, and place himself favorably before the court! We find no effort of this kind made, his mouth is closed, the suspicion resulting from his silence is fastened upon him and impressed upon the conscience of the court, and he, and he alone, must be held responsible for both the effect and consequence of his omission. These facts and these circumstances, we think, afford evidence sufficiently strong to repel the denial of fraud and misrepresentation contained in the defendant's answer. They are more potent to our minds than their asseveration by one witness sustained by corroborating circumstances less conclusive than the concatenation of facts just stated. Without assuming to act as censor upon the morals of our fellow citizens, we may be permitted to say, that when a case is presented for our adjudication exhibiting facts irrefragibly proving not only *misrepresentation*, but *misrepresentation false* and *wilful*, we feel no hesitancy in characterizing the facts as they deserve, and visiting upon the party causing injury to an individual, the full penalty of the law denounced upon such conduct. To do otherwise, if we comprehend our duty as a Court of chancery, we would fall far short of the obligation which the principles of equity jurisprudence impose on us; for there is nothing so repugnant to good conscience as falsehood; which is the main element and chief ingre-

dient in *fraud*, one of the most important of the original subjects of equitable cognizance and jurisdiction.

We have said that the proof shows a deficiency in the quantity of land which the tract was represented to contain. We will now proceed to determine the extent of that deficiency.— And to do this upon equitable principles, we will assume that the defendant had ground, in 1851 and 1852, to believe that his farm contained 120 acres, for he gave it in for assessment, those years, at that quantity, and judging his conduct, in that respect, by the motives which ordinarily govern mankind, in their conduct in reference to subjects involving their interests, we must believe he was sincere in supposing, then, that his farm in reality did contain at least 120 acres, or he would not have given it in for assessment at that quantity, for it was clearly against his interest to have it assessed as containing more than the facts warranted. We are also authorized to assume, from the facts proved, that the loss from 120 acres, which we have conceded the defendant believed his farm contained in 1852, down to the 102, which we have already shown it must have contained when the complainant got possession of it under the contract with the defendant, was occasioned by the abrasions of the river, which the defendant represented to the complainant occurred at each and every succession of high water in the Arkansas, and was not a greater loss than she might reasonably be supposed to have anticipated from that cause, and allowed the defendant, under the margin retained by himself in his contract, by the use of the phrase " *more or less*," after the statement of the quantity, as a part of the description of the premises sold. Holding, as we do, and as we have already intimated, that the quantity intermediate the quantity represented—180 acres, and that which we have assumed the defendant had a right to suppose his farm contained at the date of the sale—120 acres, amounting to 60 acres, was represented as being included and embraced in his farm without a fact to authorize the representation, we are constrained to hold the deficiency in the quantity to be 60 acres, being the difference

between 180 and 120, the quantity represented and the number of acres the defendant had a right to believe himself possessed of at the date of the contract with the complainant.

Evidence was introduced, and the fact conclusively established, that the tract of land in question, though less than 180 acres, was, and still is worth from 25 to 30 dollars per acre, and it is insisted by the counsel for appellee, that it would be inequitable and unjust to permit the appellant to retain the quantity really existing and allow her compensation for the deficiency in proportion of the gross price agreed to be paid for the supposed quantity—180 acres. In response to this we have to say that we can alone look to the agreement of the parties to determine the value of the premises in question. By their contract, solemnly entered into, they have computed the tract, supposed to contain 180 acres, at the gross price of $1,500, or at the average value of $8 33⅓ per acre. The evidence of other persons, as to their estimate of the value of the land, must be regarded as foreign to the subject and not pertinent to the enquiry. The true rule in analogous cases being, that the price paid must be regarded as the only evidence of the value. See *Stow vs. Bozeman's Ex'rs*. 29*th Ala. Rep.* 401; *Rowland's Adm'r vs. Shelton*, 25*th Ala. Rep.* 220; *Wortley, Brown & Co. vs. Patterson*, 20 *Ala. Rep.* 172; *Whiteside vs. Jennings*, 19*th Ala. Rep.* 790; *Marshall vs. Wood*, 16 *Ib.* 812; *Willis vs. Dudley*, 10 *Ib.* 938; *Gibbs vs. Jemison*, 12 *Ib.* 820.

4th. Having held that there is a deficiency in the quantity, we will proceed to answer the enquiry as to whether the complainant has shown herself entitled to any relief.

The general rule is, that when a misrepresentation is made as to quantity, though innocently, the right of the purchaser is to have what the vendor can give with an abatement out of the purchase money for so much as the quantity falls short of the representation. See 1 *Sug. on Vend.* (7*th Edition*) 431; also *Hill vs. Buckley*, 17 *Ves.* 394; *Bond vs. Jackson*, 3 *Hayw.* 189; *Quisnel vs. Woodlief*, 6 *Call, referred to above as reported in* 2 *Hen. & Munf.* 173, *Note; Nelson vs. Carrington*, 4 *Munf.* 332;

*Wainwright vs. Read,* 1 *Dessaus.* 573; *Glover vs. Smith, Ib.* 433; *Durrett vs. Simpson,* 3 *Monroe* 519.

The same principle is thus expressed by Mr. JUSTICE STORY, " The general rule is, that the purchaser, if he chooses, is entitled to have the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate. See 2 *Story Eq. sec.* 779; also *Moss vs. Elmendorf,* 11 *Paige* 277; *Voorhees vs. De Meyer,* 2 *Barb. Sup. Ch. Rep.* 37; *Wiswall vs. McGowan, Ib.* 270.

In *Nelson vs. Matthews and another,* 2 *Hen. & Munf.* 177, it was held that the compensation, or abatement on account of the deficiency, ought to be in proportion to the price given for the whole tract as represented: and this we believe is the general rule when applied to a state of facts as shown by the record before us. Applying this rule, what should be the amount of the abatement or compensation in this cause? We have already held the deficiency in quantity to consist of 60 acres. The sum stipulated, supposing the tract to contain 180 acres, was $1,500. By this computation the land was estimated at $8 33⅓ per acre. At the same estimate the value of the 60 acres deficient is worth by computation $500. This amount should be considered as paid on the land at the date of the contract, so that there only appear due on the judgment enjoined $50 00 and interest on this sum from 3d February, 1854, at 10 per cent. and cost of suit.

The decree of the Court below dismissing the complainant's bill, dissolving the injunction in whole and refusing the complainant any relief under her bill, will be and the same is hereby reversed; and let a decree be entered in this Court, to be certified to the Court below as the decree of that Court, in conformity with this opinion, that is to say; that the judgment at law set forth in the bill be perfectually enjoined, except as to the sum of fifty dollars, and interest on that sum at 10 per cent. per annum from 3d February, 1854, and the costs of that suit,

and on the complainant paying or causing to be paid to the defendant the said sum of $50 and interest as aforesaid, that the said defendant make or cause to be made to her, her heirs or assigns a deed in fee simple to the quantity of 96 acres, more or less, computed to remain in the farm described in the bond of defendant to complainant—and that defendant pay the costs of this suit in this Court as well as in the Court below.

Absent, Mr. Chief Justice ENGLISH