# THE BOARD OF COMMISSIONERS OF THE FUNDED DEBT OF THE CITY OF SAN JOSE *v.* COLEMAN YOUNGER.

RESCINDING AN EXECUTED CONTRACT FOR SALE OF LAND.—If a Board of Commissioners, having the title of the land of a city in trust for sale, adopt a rule to sell to occupants in possession at a certain price, and one in possession of seventy-two acres petitions to buy a tract stated to contain about seventy-two acres, giving courses, distances, and monuments in the petition, and the tract contains the seventy-two acres, and eighty acres in the occupation of another, and the Board have the means of ascertaining all the facts, and make a deed to the petitioner, a Court of equity will not rescind the contract at the suit of the Board.

FACTS NECESSARY TO OBTAIN RECISION OF EXECUTED CONTRACT.—Where a party seeks the recision of an executed contract for the sale of land on the ground of a false suggestion, it must appear that the misrepresentation complained of was as to a material fact by which the party was induced to make the contract to his injury, and in relation to which he placed confidence in the other, by reason of his not having the means of knowledge within his own reach.

MISREPRESENTATION WITHOUT INJURY.—A naked misrepresentation, however wrong in point of morals, unaccompanied by actual damage, does not afford ground for relief against an executed contract for the sale of land.

RECISION OF CONTRACT BY REASON OF SUPPRESSION OF FACT.—A contract will not be rescinded on account of a suppression of a fact by one party, unless the concealment resulted in injury, and the concealed fact was material, and one which the party was under some legal or equitable obligation to disclose.

MISTAKE IN NUMBER OF ACRES SOLD.—If land is sold by metes and bounds, with a statement of the number of acres, a mistake as to the number of acres affords no ground of action, unless it appears beyond controversy that quantity was one of the principal conditions of the contract.

WHEN VENDOR HAS MEANS OF ASCERTAINING QUANTITY OF LAND.—If the seller has the means of ascertaining the quantity of land and does not do so, equity will afford him no relief on the ground that the buyer misrepresented the quantity.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

This was an action to have the deed of the plaintiffs to the defendant, so far as the same included the land in the possession of Gish, declared fraudulent and void, and to compel the defendant to reconvey the same to plaintiffs. Plaintiffs recovered judgment, and on application of defendant a new trial was granted. Plaintiffs appealed from the order granting a new trial.

The other facts are stated in the opinion of the Court.

*S. O. Houghton,* and *R. F. Peckham,* for Appellants, argued that the evidence showed actual fraud because of the false suggestion as to quantity contained in the petition, and the concealment of the fact that Gish was in possession, and that if the mistake was innocently made on the part of Younger it was still a fraud, and cited *Morris* v. *Nixon,* 1 How. U. S. 118 ; *Irwin* v. *Robinson,* 13 Cal. 116, 126 ; Hilliard on Mort., Ch. 111, Secs. 1 to 4.

*J. M. Williams, C. T. Ryland,* and *C. M. Younger,* in *pro. per.,* for Respondent, argued that neither the complaint nor the evidence showed any fraud from which an action could lie, and cited *Green* v. *Covillaud,* 10 Cal. 317 ; *Herron* v. *Hughes,* 25 Cal. 555 ; *Taylor* v. *Fleet,* 4 Barb. 95 ; *Michael* v. *Michael,* 4 Iredell's Ch. 349 ; *Harris* v. *Taylor,* 15 Cal. 348 ; *Meeker* v. *Harris,* 19 Cal. 378 ; and *Murdock* v. *Chenango Insurance Co.,* 2 Comstock, 210.

By the Court, Sanderson, C. J.

This is an appeal from an order granting a new trial upon the application of the defendant.

The facts of the case, as shown by the statement on motion for new trial, so far as a statement of the same is material to a proper understanding of the grounds of our decision, are substantially as follows :

On or about the 15th of December, 1860, the defendant, by his agent, C. B. Younger, made application to the plaintiffs by petition, in writing, for a conveyance from them to him of a certain tract of land held by them as trustees for the purposes and as provided in an Act entitled " an Act to authorize the funding of the unfunded debt of the City of San José and to provide for the payment of the same," passed April 21st, 1858. (Statutes of 1858, p. 193.) The petition described the land by metes and bounds, and courses and distances, concluding the description in these words : " containing about seventy-two acres of land." For the purposes of their own government

in the sale of lands, the Commissioners (the plaintiffs) had established a rule to the effect that where the land was occupied they would sell only to the actual occupant thereof, and for no sum less than one dollar and twenty-five cents per acre; which rule, with one or two exceptions, had been uniformly observed by them, and in no case had land been sold at less than one dollar and twenty-five cents per acre. This rule of the Board of Commissioners was known to the defendant's agent at the time he presented his petition. Aside from the contents of the petition, the agent of the defendant made no representations to the Commissioners as to the quantity or possession of the land, nor was he asked any questions by them as to either. All that passed between them was an inquiry on the part of the agent as to how much he would have to pay for the land; in response to which he was told that he would have to pay ninety dollars, which sum he then and there paid, and ten days thereafter received from the Board a conveyance of the land, following the description in every respect as set out in the petition. The conveyance was drawn by the defendant's agent. At the date of these transactions maps of the land held by the Board of Commissioners, as aforesaid, were in the possession and custody of the Board.

Subsequently it was discovered that the description in the deed contained one hundred and fifty-four acres instead of seventy-two; and that at the date of the foregoing transactions the defendant was in the actual possession of only seventy-two acres thereof, and the remaining eighty-two acres were in the actual possession of one Gish, the two tracts being separated by a fence belonging in part to the defendant and in part to Gish. The fact that the description in the petition and deed contained more than seventy-two acres, and the further fact that the defendant was not in the actual possession of the overplus, was in point of fact unknown to the members of the Board at the time the deed was executed, and the same would not have been so executed had they been fully advised as to the truth, because it would have been contrary to their rule to have done so.

After the Board had discovered these facts, they requested the defendant to reconvey the eighty-two acre tract, and prepared and tendered to him a deed for that purpose, which the defendant refused to execute; but the Board did not tender back the ninety dollars which the defendant had paid, nor did they offer to rescind the entire contract; nor did the defendant base his refusal upon the ground that the last named tender and offer were not made, but he professed ignorance of the fact that his deed embraced more than seventy-two acres and included eighty-two acres in the possession of Gish, and offered to pay for the latter at the rate of one dollar and twenty-five cents per acre. This claim of ignorance, however, it is claimed by counsel for appellant (and we think justly so) is fully answered by the statement of his agent, while on the witness stand, that the defendant told him that he wanted to include the Gish tract, because he claimed to have title to it.

Although, as claimed by himself, Gish had been in possession since 1851, he had never made application to the Board for the purchase of the eighty-two acre tract.

The gravamen of the complaint is that the defendant fraudulently represented to the Board that the description in his petition did not contain more than seventy-two acres, and that the whole tract therein described was in his possession, and that he fraudulently suppressed the fact that it contained one hundred and fifty-four acres, and that Gish was in the actual possession of eighty-two acres, part and parcel thereof. The Court, however, did not find this to be true, but found that there had been a mutual mistake as to the quantity and possession of the land.

In the foregoing statement of the case we have omitted certain facts which make a part of the defendant's case, but we have aimed to state-fully such facts as constitute the plaintiff's case; and we have thus restricted the statement because we are of the opinion the plaintiffs are not entitled to any relief upon the case made by them.

The gravamen of the complaint as already stated is the alleged fraudulent representation of the defendant as to the

quantity of the land contained in the description thereof given by him in his petition, and the alleged fraudulent suppression of the fact that another and not himself was in possession of a part thereof.

### *Recision of a contract by a Court of Equity:*

Where a party seeks a recision of a contract on the ground of a false suggestion, it must appear that the misrepresentation complained of was as to a material fact, by which the party was induced to make the contract, and that he was actually misled thereby to his injury ; for a naked misrepresentation, however wrong it may be in point of morals, unaccompanied by any actual damage or injury, does not afford ground for relief against an executed contract. Neither Courts of law nor equity enforce obligations or redress wrongs which are such only *in foro conscientiæ*, and are followed by no loss or damage. It must also appear that the misrepresentation was in regard to some matter touching which the party claiming to have been deceived has placed a known trust and confidence in the other by reason of his not having equal means of knowledge with him as to the true conditions. But a Court of equity will not relieve a party from a contract on the ground of misrepresentation where no confidential relation exists between the parties, and where the means and sources of knowledge being equally accessible and open to both, the party complaining has no right to place reliance upon the statements of the other ; for the law aids the vigilant, not the idle,· and will not undertake the care of persons who will not, with the means at hand, take care of themselves. (1 Story's Eq. Juris. Sec. 195, *et sequens*.)

So, where the ground of complaint is the suppression of a fact, the same general principles apply. The fact concealed must be a material one, and the concealment must result in some injury or prejudice to the party complaining. Moreover the fact concealed must be one which the one party, upon the ground of confidence or otherwise, is under some legal or equitable obligation to disclose to the other, and which the

latter, in the language of Mr. Justice Story, has a right to know, not merely *in foro conscientiæ,* but *juris et de jure.* (1 Story's Eq. Juris. Sec. 204, *et sequens.*)

Interrogate the facts of the present case by the light of the foregoing principles and we are of the opinion that they do not stand the tests therein established.

No confidential relation exists between the parties. Neither has means of knowledge or sources of information which the other has not. They occupy with respect to each other the naked relation of buyer and seller. The facts most material to the latter are quantity and possession. (We assume for the purposes of our decision, that they are material.) The land in respect to which the proposed contract is to be made is in the immediate vicinity and equally accessible to both, and moreover the maps and surveys thereof are in the immediate custody of the seller and open to his inspection. Thus he either has all the information or can readily obtain it, which he needs in order to make a contract which will be fair and satisfactory to himself, and he had no occasion or necessity for relying, in any respect or particular, upon the statements of the buyer. Under these circumstances the buyer proposes to purchase the land in question, submitting his proposition in writing in the customary mode, and accompanying it with a deed in each of which the land which he proposes to buy is alike described by courses and distances, metes and bounds and quantity. He volunteers no statement as to the fact of possession or quantity and is asked no questions as to either. He merely asks the price in gross, and on being told, pays it. True he knows that the seller has a rule to the effect that he will sell to the occupant in preference to any other purchaser; but he also knows that the rule is merely an arbitrary one, not binding upon him much less upon the buyer, and that he can depart from it if so disposed. The seller takes the money, retains the deed for fifteen days, thus affording him ample time and opportunity for investigation, (which entirely negatives

23

the idea that he was taken by surprise,) and then delivers it to the buyer duly executed and acknowledged.

No representations were made except through the petition and deed. Upon the fact of possession they were both silent. Upon the fact of quantity they both told two stories, one true and the other false, or we will assume that they told two stories, one true and the other false, thus, contrary to the rule of law, attaching to the language "containing about seventy-two acres" the same force and effect which is accorded to landmarks accompanied by courses and distances upon the question of quantity. The former did not profess to state the precise quantity, while the latter supplied the data from which the exact quantity could be ascertained by computation; or if, as claimed by counsel for appellant, the courses and distances are inaccurate, the landmarks given afforded the means for their correction with a view to the computation. In view of these facts, it is at least doubtful whether there was any misrepresentation at all as to quantity, especially in view of the fact that, after all, the entire representation was a mere description of the land, given mainly for the purposes of a formal conveyance, rather than as a statement of facts for the purpose of effecting a sale and purchase, and in view of the law, which is to the effect that the language "containing about seventy-two acres," or any equivalent language in a deed is mere matter of description, and of but little if any account for that purpose even, and always gives way to courses and distances, which in turn give place to metes and bounds. Hence, where land is sold by metes and bounds, concluding with a statement of the number of acres, a mistake as to the number of acres affords no ground of action by either party against the other, unless it be made to appear, beyond controversy, by clear and positive testimony, that quantity constituted one of the principal conditions of the contract, and did not operate merely as an inducement to the purchase. (*Marvin* v. *Bennett*, 26 Wend. 169; 8 Paige, 312.) The expressions used in such cases "about so many acres," or "so many acres, more or less," being openly indeterminate and uncertain,

show that they are not of the essence of the contract, and that reliance, so far as quantity is concerned, is placed entirely upon the description by metes and bounds; so if it should, upon an after computation turn out that there is a greater or less number of acres than stated, there can be no recovery for the excess or deficiency, as the case may be, especially where, as in the present case, the complaining party has had every opportunity, by the exercise of ordinary vigilance, of guarding against any mistake in that respect. (*Marvin* v. *Bennett, supra; Northrop* v. *Sumner,* 27 Barb, 196 ; *The Morris Canal Company* v. *Emmett,* 9 Paige, 168.)

But even assuming that it did amount to such a misrepresentation on the part of the defendant as to the quantity embraced within the boundaries given by him as would, under some circumstances, entitle the plaintiffs to relief in a Court of equity, we think that such circumstances are entirely absent from this case and that any loss or injury sustained by them is to be attributed to their own negligence and *laches.* They had the means of ascertaining the true quantity at hand, either by an inspection of the surveys and maps in their possession, or by visiting and inspecting the premises themselves which were in the immediate vicinity and as accessible to them as to the defendant. They not only did not resort to either of those sources of information, but they did not even take the precaution of asking the defendant as to the accuracy of his estimate of the quantity. Having thus failed to exercise even the most ordinary care and diligence, a Court of equity will not listen to their complaint. (1 Story's Eq. Juris., Sec. 200.)

What has been said as to the alleged misrepresentation as to quantity applies also as to the alleged concealment of the fact that another and not the defendant was in the actual possession of a part. As already remarked, the contracting parties stood at arms length, each acting upon his own judgment, and neither needing or asking information from the other. If there was, therefore, any legal or equitable obligation cast upon the defendant to disclose the fact that he was not in the

possession of the entire tract, it was so cast only by force of the rule adopted by the Board, not to sell except to the actual occupant. But that, as already stated, was an arbitrary rule of private conduct, not binding upon the Board, and certainly not upon any one else, and one which the Board could not adhere to, if the actual occupant failed to apply for the land within a reasonable time, without violating their trust, and, to a certain extent, defeating the object for which it was created. The Act of the Legislature creating the trust makes no provision for such a rule, and while we admit that its adoption by the Board was unobjectionable and proper, it cannot be regarded as imposing either an equitable or legal obligation upon any one.

We have not noticed the technical points made in the case, because we deemed it best for the interest of both parties to ground our decision upon the merits, all the facts being before us.

The order granting a new trial is affirmed.

Mr. Justice RHODES, being disqualified, did not participate in the decision.